United States District Court
Eastern District of New York

1:19-cv-00302

Keith Kennedy individually and on behalf
of all others similarly situated

Plaintiff

- against -

Mondelēz Global LLC

Defendant

Complaint

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Mondelēz Global LLC ("defendant") manufactures, markets and distributes snack products under the brand, "Honey Maid" (the "Products"), sold to consumers by third-parties from brick-and-mortar stores and online.

2. The Products purport to be graham crackers and are available in no fewer than 12 varieties, including original, vanilla, chocolate and cinnamon.

3. The Honey Maid brand has existed for almost 100 years and is synonymous with graham crackers, similar to other well-known consumer brands like Kleenex (facial tissues) and Vaseline (petroleum jelly).[1]

4. The common front label representations include "Honey Maid," "Made with Real Honey," "8g of Whole Grain per 31g serving," "No High Fructose Corn Syrup," the flavor variety, if any, and a statement of identity that the Products are "Grahams."

5. In extra-label representations, the Products are referred to as "graham crackers."

---

[1] https://www.honeymaid.com/history

Front Label             Google Search Results





6.     Defendant's website invites consumers to "explore our graham cracker varieties" and is replete with references to "graham crackers," i.e., "Our Honey Maid graham crackers have whole grain and real honey" and "Get Creative with Graham Crackers."



2



7.     Leading retailers such as Target and Walmart list the Products as "Graham Crackers," and while defendant may not own or operate those websites, it provides product descriptions, images and copy for those retailers to use.



8.     Consumers increasingly seek flours made from whole grain for its numerous health benefits compared to refined white flour, also referred to as unbleached enriched flour.

9.     Graham flour is a type of coarse-ground whole wheat flour, made from the whole grain.

10.     The net representations of "grahams" (on the label) and "graham crackers" (in other media) is misleading and deceptive, creating an erroneous impression that graham flour is the predominant or exclusive flour component, as opposed to white flour.

11.     This is because the main ingredient in the Products is not graham flour but white flour ("unbleached enriched flour"), indicated on the ingredient list in miniscule font below the nutrition facts on the side panel.



12.     It is reasonable for consumers expect the Products' composition to conform to their name because the term "graham" modifies "crackers" and even taken alone, "grahams" is understood to refer to snacks which have graham flour as the main flour ingredient.

13.     "Grahams" is located on the label where consumers are accustomed to seeing an accurate description of the food, unadorned with elegant fonts and trade dress.

4

14.    The term "grahams," even without the secondary word, "crackers" is insufficient to put reasonable consumers on notice that the Products are not primarily derived from graham flour.

15.    Since "grahams" occupies the place next to the factual net weight of the Product, 408g, and is in the same font, it is given a level of authoritativeness as to the Products' true nature.

16.    Unlike a scale for weight, there is no apparatus that has conclusively identified the Products as "grahams."

17.    Dictionaries confirm what reasonable consumers expect when it comes to graham crackers, defining them as "a slightly sweet cracker made of whole wheat flour" and "a semisweet cracker, usually rectangular in shape, made chiefly of whole-wheat flour."[2]

18.    The term "grahams" or "graham crackers" to refer to the Products is also misleading because the the name is not uniform among all identical or similar products which are designated as "graham crackers," where graham flour is the predominant flour.




---

[2] https://www.dictionary.com/browse/graham-cracker

19.    The practice of passing off refined white flour mixed with small amounts of coarser bran (whole wheat) flour is a practice which has existed for over 100 years.[3]

20.    While the form of the misleading practice has changed, deceptive representations of the amount of graham flour in products has not.

21.    Excluding tax, the Products cost no less than $2.99, a premium price compared to other similar products.

Jurisdiction and Venue

22.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

23.    Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

24.    This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

25.    Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and in New York.

26.    A substantial part of events and omissions giving rise to the claims occurred in this District.

Parties

---

[3] J.A. Le Clerc et al., "Graham Flour: A Study of the Physical and Chemical Differences Between Graham Flour and Imitation Graham Flours," USDA Bureau of Chemistry Bulletin (164), Apr. 12, 1913

27.     Plaintiff is a citizen of Kings County, New York.

28.     Defendant is a Delaware limited liability company with a principal place of business in Deerfield, Illinois (Lake County) and upon information and belief, no member of defendant is a citizen of New York.

29.     In 2016, 2017 and/or 2018, plaintiff purchased one or more of the Products for personal consumption, for no less than $2.99 per product, excluding tax, within this district and/or State.

30.     Plaintiff paid this premium because prior to purchase, plaintiff saw and relied on the misleading representations.

31.     Plaintiff would purchase the Products again if there were assurances that the Products' representations were no longer misleading.

<u>Class Allegations</u>

32.     The classes consist of all consumers in the following states: <u>all</u>, <u>New York</u> who purchased any Products with actionable representations during the statutes of limitation.

33.     A class action is superior to other methods for fair and efficient adjudication.

34.     The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

35.     Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff(s) and class members are entitled to damages.

36.     Plaintiff(s) claims and the basis for relief are typical to other members because all were subjected to the same representations.

37.     Plaintiff(s) is/are an adequate representative because his/her/their interests do not

conflict with other members.

38.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

39.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

40.   Plaintiff(s) counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

41.   Plaintiff(s) seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>

42.   Plaintiff incorporates by references all preceding paragraphs.

43.   Defendant's representations are false, unfair, deceptive and misleading

44.   Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

45.   Plaintiff desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type

46.   The representations and omissions were relied on by plaintiff and class members, who paid more than they would have, causing damages.

<u>Negligent Misrepresentation</u>

47.   Plaintiff incorporates by references all preceding paragraphs.

48.   Defendant misrepresented the composition of the Products.

49.   Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

50.   This duty is based, in part, on defendant's "half-truth" that the Products were

8

"Grahams," a clever description of the Products to avoid the more straightforward but glaringly deceptive name, "Graham Crackers," conveniently used in off-label promotion.

51.    Defendant negligently misrepresented and/or negligently omitted material facts.

52.    Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

53.    Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, thereby suffering damages.

<u>Breach of Express Warranty and Implied Warranty of Merchantability</u>

54.    Plaintiff incorporates by references all preceding paragraphs.

55.    Defendant manufactures and sells Products which purport to be derived predominantly from whole grain flour as opposed to white flour.

56.    The Products, by their representations as "grahams" and "graham crackers," warranted to plaintiff and class members that they contained nutrients such as fiber and protein in superior amounts to what they actually possessed, based on if they were primarily from whole grain flour.

57.    Defendant warranted such attributes to plaintiff and class members, when this was not truthful and was misleading.

58.    Defendant owed a special duty based on its special role as the heir of a National Biscuit Company, to represent all of the facts, instead of only those which would be viewed favorably.

59.    The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

60.    Plaintiff and class members relied on defendant's claims, paying more than they

would have.

## Fraud

61.    Plaintiff incorporates by references all preceding paragraphs.

62.    Defendant's purpose was to mislead consumers who seek products with more nutrients and higher quality ingredients which confer health benefits.

63.    Defendant's intent was to secure economic advantage in the marketplace against upstart competitors.

64.    Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

## Unjust Enrichment

65.    Plaintiff incorporates by references all preceding paragraphs.

66.    Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

 **WHEREFORE,** plaintiff prays for judgment:

1.    Declaring this a proper class action, certifying plaintiff(s) as representative and the undersigned as counsel for the class;

2.    Entering preliminary and permanent injunctive relief by directing defendant to correct such practices to comply with the law;

3.    Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and GBL claims;

10

4.  Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

5.  Such other and further relief as the Court deems just and proper.

Dated:   January 15, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan (SS-8533)
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

Levin-Epstein & Associates, P.C.
Joshua Levin-Epstein
1 Penn Plaza, Suite 2527
New York, NY 10119
(212) 792-0046
joshua@levinepstein.com

11

1:19-cv-00302
United States District Court
Eastern District of New York

Keith Kennedy individually and on behalf of all others similarly situated

Plaintiff

- against -

Mondelēz Global LLC

Defendant

# Complaint

Sheehan & Associates, P.C.
505 Northern Blvd., #311
Great Neck, NY 11021
Tel: (516) 303-0052
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  January 15, 2019

/s/ Spencer Sheehan
Spencer Sheehan