353 NORTH CLARK STREET, CHICAGO, ILLINOIS 60654

JENNER & BLOCK LLP

July 17, 2019

Dean N. Panos
Tel  +1 312 923-2765
dpanos@jenner.com

**VIA ECF**

The Honorable Sanket J. Bulsara
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:     *Kennedy v. Mondelēz Global LLC*, Case No. 1:19-cv-302-ENV-SJB

Dear Judge Bulsara:

In advance of the pre-motion conference scheduled for July 26, 2019, I write on behalf of Defendant Mondelēz Global LLC ("MDLZ") to articulate the basis for MDLZ's motion to dismiss Plaintiffs' First Amended Complaint ("FAC").

Plaintiffs' FAC is premised on the same basic theory of deception as the initial Complaint in this case.  Plaintiffs allege that MDLZ mislabels its Honey Maid and Nabisco graham crackers as "grahams" or "graham crackers," which allegedly suggests "that such a product will contain more graham flour than white flour."  FAC ¶ 24.  Notably, Honey Maid graham crackers do not purport to be "made with graham flour"; in fact, the *only* place that the labeling mentions graham flour is in the ingredient list—which discloses that graham flour is *not* the predominant grain in Honey Maid graham crackers.  *See id.* ¶ 27.  But Plaintiffs nonetheless assert that the labeling is misleading because "graham flour (whole grain wheat flour) is present in an amount less than white flour (unbleached enriched flour)."  *Id.*

Because MDLZ's earlier request for a pre-motion conference articulates why this theory of deception is implausible, and because Plaintiffs' FAC largely reiterates the same theory of deception, MDLZ will not repeat the arguments outlined in its earlier letter here.  Instead, the purpose of this letter is to articulate why the handful of new allegations in the FAC — which focus on alleged violations of FDA regulations — also do not amount to a plausible claim for relief.

As a threshold matter, Plaintiffs cannot use a consumer fraud claim to prosecute violations of regulatory statutes, such as the federal Food, Drug & Cosmetic Act, that do not supply a private right of action.  *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199-200 (2d Cir. 2005) (holding that G.B.L. § 349 could not be used to "circumvent the lack of a private right of action for violation of a federal law").  But even if Plaintiffs *could* seek relief based on alleged violations of FDA regulations, they have not plausibly alleged that MDLZ violated *any* such regulations:

- Plaintiffs allege that "[t]he Products' statement of identity — 'grahams' — represent[s] that a single ingredient constitutes 100% of the food."  FAC ¶ 94.  But as the FDA has made clear, the "statement of identity" can consist of either "[t]he common or usual name of the *food*" or,

The Honorable Sanket J. Bulsara
Page 2

alternatively, "[a]n appropriately descriptive term, or when the nature of the *food* is obvious, a fanciful name commonly used by the public for such *food*." 21 C.F.R. § 101.3(b) (emphasis added). In other words, the statement of identity refers to the *food*, not to its ingredients. Moreover, even if "grahams" constituted a statement of identity, that does not mean that the labeling suggests the product is made exclusively from graham flour. Instead, the term "grahams" serves as an "appropriately descriptive name" that, combined with the prominent images of graham crackers on the packaging, makes clear that the product is a graham cracker. *Id.* It does not represent, one way or the other, the *amount* of graham flour in the product.

- Plaintiffs claim that the name of the products are misleading because they are "not uniform among all identical or similar products." FAC ¶ 51. But just as different varieties of "crackers" can have different flavors, shapes, and ingredient compositions, so too can different varieties of "graham crackers." Plaintiffs' allegation that the terms "grahams" and "graham crackers" do not "identify what distinguishes the Honey Maid and Nabisco Grahams Products from other foods which are accurately described and named as graham crackers," (*id.* ¶ 52), is circular. It begs the question of whether reasonable consumers actually expect the term "grahams" to constitute a representation about whole grain (or "graham flour") content.

- Despite Plaintiffs' claims to the contrary, the terms "grahams" and "graham crackers" are neither express nor implied nutrient content claims, as they do not "expressly or implicitly characterize[] the level of a nutrient" in the product. 21 C.F.R. § 101.13(b). To the extent Plaintiffs suggest that these terms constitute is a statement about the amount of graham flour in the product, it is still not a nutrient content claim because graham flour is not a "nutrient." *See* 21 C.F.R. § 101.9(c) (listing "nutrients" that must be disclosed in food labeling, such as calories, total fat, carbohydrates, and sodium). Neither term constitutes an express nutrient content claim, as they do not state *how much* graham flour is in the product. They accordingly do not constitute a "direct statement about the level (or range) of a nutrient in the food," such as "'low sodium' or 'contains 100 calories.'" 21 C.F.R. § 101.13(b)(1) (defining express nutrient content claims). These terms are also not implied nutrient content claims: they do not "suggest[] that a nutrient is absent or present *in a certain amount*," do not "suggest that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices," and are not "made in association with an explicit claim or statement about a nutrient (e.g., 'healthy, contains 3 grams (g) of fat.'" *Id.* § 101.13(b)(2) (emphasis added).

- Plaintiffs claim that the names "grahams" and "graham crackers" violate 21 C.F.R. § 101.18 because they "suggest[] the name of one but not all ingredients, even though the names of all such ingredients are stated elsewhere in the labeling." FAC ¶ 30. But courts faced with claims under 21 C.F.R. § 101.18 have made clear that such names are deceptive only when they "mislead consumers into believing the listed ingredients are the sole components of the [food]." *Ackerman v. Coca-Cola Co.*, No. 09-395, 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010) (holding that the plaintiff stated a plausible claim by alleging that the term "vitaminwater" misled "reasonable consumer[s] into believing that vitaminwater is composed solely of vitamins and water"). Here, the labeling of the products makes abundantly clear that they contain ingredients other than graham flour: they describe the products as "crackers," and the packages prominently display an image of a graham cracker. *See* FAC ¶ 5. The labeling

2

The Honorable Sanket J. Bulsara
Page 3

does not suggest that Honey Maid graham crackers or Nabisco Grahams contain only one ingredient, and it accordingly does not violate 21 C.F.R. § 101.18.

- Plaintiffs suggest that the use of the term "grahams" or "graham crackers" misleadingly suggests that the products are a "good source" of fiber or are "high" in fiber, even though they are not eligible to bear either claim because they contain less than 10% of the daily reference value of dietary fiber.  See FAC ¶¶ 91-92; see also 21 C.F.R. § 101.54 (FDA regulation governing "good source" and "high" claims).  But as the packaging makes clear, Honey Maid graham crackers and Nabisco Grahams do not purport to be a "good source" of fiber or "high" in fiber; in fact, none of the labeling statements on the packaging even mention fiber.  See FAC ¶ 6.  As several courts have made clear, 21 C.F.R. § 101.54 applies narrowly to labeling claims that state a product is "high" in or a "good source" of a given nutrient — not to claims that merely imply it.  *See, e.g., McMorrow v. Mondelēz Int'l, Inc.*, No. 17-2327, 2018 WL 5024840, at *3 (S.D. Cal. Oct. 17, 2018) ("Simply because . . . Defendant's advertising statements imply the Products are high in fiber does not trigger Defendant to advertise or label the Products as 'high' in fiber nor to follow any rules related to this.").

- Plaintiffs assert that the statement that the products contain "8 g of whole grain per 31 g serving" misleads consumers because the products contain 23 grams of refined grains per serving.  FAC ¶¶ 85-89.  But the FDA authorizes manufacturers to make "expressed nutrient content claims," or "direct statement[s] about the level . . . of a nutrient in the food." 21 C.F.R. § 101.13(b)(1); *see also* 21 C.F.R. § 101.13(i) (stating that the "labeling of a product may contain a statement about the amount or percentage of a nutrient").  This regulation specifically permits claims about the level of a nutrient in a food product — including the "8 g of whole grain" at issue here.  *See, e.g., Red v. Kraft Foods, Inc.*, 754 F. Supp. 2d 1137, 1139 (C.D. Cal. 2010) (noting that labeling claims highlighting "specific quantities of 'whole grain' per serving [are] not actionable on the ground that they are preempted by federal law").

In addition to these new allegations, the FAC also asserts a claim under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301.  But the phrases "grahams" and "graham" crackers do not constitute a "written warranty" under the MMWA, as they are merely "product description[s]" and do not represent that the products are "defect free" or that they "will meet a specified level of performance over a specified period of time."  *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 377-79 (S.D.N.Y. 2014) (citing 15 U.S.C. § 2301(6)).  Moreover, Plaintiffs cannot state a claim under the MMWA because the products are admittedly sold for prices as low as $3.99, (*see* FAC ¶ 106), which does not satisfy the MMWA's $25-dollar minimum for "the amount in controversy of any individual claim."  15 U.S.C. § 2310(d)(3)(A); *see also Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 965-66 (N.D. Cal. 2013) (dismissing MMWA claim when the plaintiff "fails to allege the products at issue cost more than five dollars").

Respectfully submitted,

/s/ Dean N. Panos_____
    Dean N. Panos
    Elizabeth A. Edmondson
    Alexander M. Smith