Sheehan & Associates, P.C.

505 Northern Boulevard, Suite 311, Great Neck, NY 11021
tel. 516.303.0552
fax 516.234.7800
spencer@spencersheehan.com

July 23, 2019

Magistrate Judge Sanket J. Bulsara
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:    1:19-cv-00302-ENV-SJB
       Kennedy v. Mondelez Global LLC

Dear Magistrate Judge Bulsara:

  This office represents the plaintiffs.  On June 11, 2019 and July 17, 2019, defendant requested pre-motion conferences prior to moving to dismiss the Complaint and First Amended Complaint ("FAC"). Fed. R. Civ. P. 12(b)(1), (b)(6). ECF Nos. 14-15. As defendant's current letter acknowledges and relies on the June 11, 2019, plaintiff shall address the arguments raised in both letters. In accordance with the Court's Individual Motion Practices and Rules, plaintiff's response is filed "within seven days" of defendant's pre-motion letter. Section III (A).

**I.    Product's Name Referring Exclusively to More Valued Component is Misleading**

  The FAC asserts that consumers plausibly "expect foods to have common or usual names which contain simple and direct terms to indicate its basic nature and characterizing properties or ingredients." FAC 22 mirroring 21 C.F.R. § 102.5(a).

  A.  "Grahams" is Not a Fanciful Name Like "FROOT LOOPS"

  Defendant claims it is "implausible" or "hyper-literal" for consumers to believe that "the product name 'grahams' implies that a product is made of a specific type of flour, let alone that it is the predominant type of flour in the product." ECF 9 at 2 citing *McKinnis v. Kellogg USA*, No. 07-cv-2611, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) ("No reasonable consumer would view the trademark "FROOT LOOPS" name as describing the ingredients of the cereal.").

  Defendant's argument by analogy fails. In *McKinnis*, "FROOT" was a "fanciful take on the word FRUIT," a "trademarked name" and appeared *separately* from the "description of the actual ingredients of the cereal itself." 2007 WL 4766060, at *4. "Grahams" is not a "a fanciful name commonly used by the public" for the Products or *any* product which contains graham flour. ECF 15 at 2. A "fanciful name" is "overimaginative and unrealistic" – such as "moon pie" or "Hershey's Kisses." "Grahams" is spelled correctly – not as "Grams" – which otherwise could tip the consumer off that the Products may not be what they appear to be. Second, "Graham" (singular) refers to a specific standardized ingredient which has had a common consumer understanding for over 50 years, FAC 11 ("Graham flour is a coarse-ground "unbolted" flour, made from the whole grain") 21 C.F.R. § 137.200(a) ("Whole wheat flour, graham flour, entire wheat flour is the food prepared by so grinding cleaned wheat").

1

Defendant's conclusory statement that "Grahams" is "[a]n appropriately descriptive term" and the name the public uses for a food which has a modicum of graham flour is devoid of factual support even though it is a factual question not suitable for a motion to dismiss. ECF 9 at 1. Defendant has not offered proof such as consumer surveys or studies *showing* the public uses the term in this way despite the FAC's "well-pleaded factual allegations" that the public expects graham crackers to be mostly whole wheat flour.[1] FAC 13 ("Average Americans fondly recall graham crackers as a hearty snack"), 25 ("It would not be unreasonable for consumers to expect the Products to only contain graham flour"), 38-39.

      B.      Context of Products Weighs Against Dismissal

The FAC alleges it is plausible to expect the Products are predominantly whole grain due to (1) being named after a whole grain ingredient, (2) "8 g of whole grain" claim, (3) distinction from cookies in terms of sale and consumption patterns, (4) evolution of product and exposure of consumers to varieties of products which more appropriately reflect the product name, (5) emphasis on alternative sweetener to sugar, consistent with standard graham crackers and (6) darker hue of products, indicative to consumers (wrongly) of whole grain content.

In all instances where a Court finds a product's name misleading, "the labeling of the products make[s] abundantly clear that they contain ingredients other than" those indicated or implied in the product name, due to an ingredient list. ECF 15 at 2 citing *Ackerman v. Coca-Cola Co.*, No. 09-cv-395, 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010) ("vitaminwater" misled "reasonable consumer[s] into believing that vitaminwater is composed solely of vitamins and water" despite the presence of an ingredient list); ECF 9 at 2 ("an ambiguous labeling statement is not deceptive if…ingredient list or other disclaimers—would cure any deception.") citing *In re 100% Grated Parmesan Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 922 (N.D. Ill. 2017) (cellulose on ingredient list made it evident the product could not only be cheese) and *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) (listing of fruit purees in order of predominance by weight not required to be proportional to vignettes) but see *Mantikas v. Kellogg Company*, 910 F.3d 633 (2d Cir. 2018) ("we cannot conclude that these disclosures [ingredient list] on the side of the box render Plaintiffs' allegations of deception implausible").

An unstated difference between defendant's authorities and these facts is that both shelf-stable parmesan cheese and fruit puree blend are subject to regulations which specifically permitted the conduct alleged to be misleading. *In re 100% Grated Parmesan Mktg. & Sales Practices Litig.* (cellulose allowed as "filler" under standards of identity); *Workman* (vignettes on juice or puree blends need not be proportional to their presence in the product); 21 C.F.R. 102.33. In contrast to cheese and juice, no regulations exist with respect to labeling of crackers, other than the principles contained in the common or usual name regulation. FAC 22, 33; 21 C.F.R. 102.5.

---

[1] The FAC alleged that "grahams" is an inaccurate common or usual name for the Products because the word "graham" implies that this type of flour is present in an amount greater than other flour varieties (enriched or white flour). While in places the FAC states that "graham flour" is represented as "100% of the Product," this should read as "100% of the flour used in the Product." It is not possible to convert flour into a food without other ingredients and other paragraphs of the FAC reflect this.

2

Defendant correctly notes that "Honey Maid graham crackers do not purport to be "Made with Graham Flour." ECF 9 at 2 citing *Mantikas*, 910 F.3d 633 (2d Cir. 2018) ("Made with Whole Grain" to suggest that whole grains were the predominant ingredient in Cheez-It crackers"). However, this means that there is less of a question whether products named for a whole wheat flour are misleading where that ingredient is not predominant compared to enriched flour.

## II. Defendant Miscasts Plaintiff's "Fiber" Claims

The parties agree that the labeling, other than the Nutrition Facts, do not mention fiber and that "the FDA authorizes manufacturers to make "expressed nutrient content claims," or "direct statement[s] about the level . . . of a nutrient in the food." ECF 15 at 3 quoting 21 C.F.R. § 101.13(b)(1). While a product can make expressed nutrient content claims about whole grain content, this is subject to the requirement that it not be misleading and does not imply a particular level of the ingredient, i.e., "high" or "excellent source." 21 C.F.R. § 101.13(i)(3). The quantitative statement of "8g Whole Grain" without reference to refined grain is misleading because, together with the Product's name, implies the predominant ingredient is whole grain.

Nevertheless, the FAC alleges the Products make implied nutrient content claims outside the scope of those permitted by law, based on "long established relationships between ingredients and nutrients such that when a label draws attention to an ingredient, it is impliedly highlighting the presence of the associated nutrient." FAC 90 citing 21 U.S.C. § 343(r)(1) and 21 C.F.R. § 101.65 ("claim that a product is made with or otherwise contains a whole grain…implies that the product is a good source of total dietary fiber.").

## III. Analysis of Bristol-Myers Squibb is Appropriate at Certification Stage

Defendant asks for dismissal of the claims asserted by non-New York plaintiffs based on lack of personal jurisdiction. ECF 9 at 3 citing *Bristol-Myer Squibb v. Superior Court of California*, 137 S. Ct. 1773 (2017). Defendant anticipated plaintiff's response to *Bristol-Myers* – that it "addressed mass tort actions rather than class actions" and was filed in state court. *Gonzalez v. Costco Wholesale Corp.*, No. 16-cv-2590, 2018 U.S. Dist. LEXIS 171000, at *18 (E.D.N.Y. Sep. 29, 2018). While authority can be located supporting the application of *Bristol-Myers* in a class action, a closer look shows the consideration of personal jurisdiction was incidental to those Courts' dispositions. ECF 9 at 3 citing *Spratley v. FCA US LLC*, No. 17-cv-0062, 2017 WL 4023348, at *7 (N.D.N.Y. Sept. 12, 2017) (where the "first-filed" rule was not applicable for dismissal due to similar case within same District, applying *Bristol-Myers* to effectively dispose of the majority of the claims). Given the "'unsettled nature of the law following Bristol-Myers' – specifically its applicability to federal class actions," the Court should defer decision on its applicability until class certification. *Gonzalez*, 2018 U.S. Dist. LEXIS 171000, at *19.

## IV. Conclusion

For the foregoing reasons, defendant's request for a pre-motion conference should be denied. Thank you.

Respectfully submitted,<br>
/s/ Spencer Sheehan<br>
Spencer Sheehan

3

Certificate of Service

I certify that on July 23, 2019, I served the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email |
|---|---|---|---|
| Defendant's Counsel | ☒ | ☐ | ☐ |

/s/ Spencer Sheehan
Spencer Sheehan