United States District Court
Eastern District of New York

1:19-cv-00302-ENV-SJB

Keith Kennedy, individually and on behalf
of all others similarly situated

Plaintiff

- against -

Mondelēz Global LLC

Defendant

Plaintiffs' Memorandum of Law in Opposition
to Defendant's Motion to Dismiss the
First Amended Complaint

SHEEHAN & ASSOCIATES, P.C.
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
spencer@spencersheehan.com

Attorneys for Plaintiffs

Table of Contents

Table of Authorities ........................................................................................................ iv

Introduction .................................................................................................................... 1

I.  Legal Standard on Motion to Dismiss ..................................................................... 1

  A.  Factual Allegations Should be Accepted as True ........................................ 1

  B.  Plaintiff has Shown that it is Plausible a Reasonable Consumer
      Would be Misled ............................................................................................ 1

  C.  New York General Business Law 349 and 350 Provide Relief
      Where a Defendant Engages in Deceptive Acts ......................................... 2

  D.  Defendant's Label Statements Should be Viewed in Context ..................... 3

II.  Defendant's "Compound Name" Argument is Illogical and
     Misapplied ............................................................................................................... 3

III.  Plaintiffs and Reasonable Consumers are Deceived by Defendant's
      "Whole Grain" Claims ............................................................................................ 5

  A.  Expert Guidance Shows Defendant's Statements are Misleading ............... 5

  B.  "Grahams" and "Graham Crackers" are Unqualified Whole Grain
      Claims ............................................................................................................ 7

  C.  "Grahams" Emphasizes the Whole Grain Component and Omits
      Reference to the Other, Predominant Ingredient ........................................ 8

  D.  "Made With" Food Labeling Cases Cannot Overcome Deception
      of the Primary Ingredient ............................................................................ 9

IV.  Defendant's Disclaimers Fail to Resolve Ambiguity and are
     Inconspicuous ....................................................................................................... 10

  A.  Number of Whole Grains Per Serving Fails to Inform Consumers
      of Refined Grains ......................................................................................... 10

  B.  Defendant Cannot Escape Liability by Re-Classifying the
      Products as Cookies ..................................................................................... 11

V.  Defendant's Preemption Arguments are Unavailing and Misapplied ................. 12

  A.  Defendant's Whole Grain Statements are Not Express Nutrient
      Content Claims Because a "Whole Grain" is not a Nutrient ...................... 12

i

B.  Implied Preemption is Not Applicable because the Challenged
Claims are not FDA Requirements ................................................................. 14

VI.  Emphasis on Honey and Omission of Artificial Flavor from Front
Labels is Misleading ............................................................................................ 15

A.  Despite Expectations of Graham Cracker Products, Sugar is Main
Sweetener ......................................................................................................... 15

B.  Assuming a Honey-Invert Sugar Blend, Promotion of Honey
without Sugar is Misleading .......................................................................... 15

C.  Failure to Declare Artificial Flavor on Front Label ..................................... 16

VII.  Plaintiffs' Express Warranty Claims are Sufficient ........................................... 16

A.  Labeling Affirmed the Products Contained More Graham than
Enriched Flour, Non-Sugar Sweetening Agents as Primary
Sweetener and No Artificial Flavors ............................................................ 17

B.  Defendant's Statements were Relied upon by Plaintiffs .............................. 17

C.  The Express Warranties were Breached because the Products
Composition did not Comport to its Specifications ..................................... 18

D.  Plaintiffs Allege Injury Based on Defendant's Breach ................................ 18

E.  Defendant's Claim of Lack of Pre-Suit Notice is Conclusory and
Incorrect .......................................................................................................... 19

i.  Defendant's Attorneys' Statements are Insufficient to
Overcome Established Pleading Standards .......................................... 19

ii.  Pre-Suit Notice Not Required .............................................................. 20

iii.  Notice Requirement is Satisfied because Defendant had Actual
Knowledge Through Other Versions of its Products ........................... 20

iv.  Notice Requirement is Satisfied through the Filing of the
Amended Complaint .............................................................................. 21

F.  Privity is Not Required ................................................................................... 21

G.  Plaintiffs are Third-Party Beneficiaries ....................................................... 22

VIII.  Plaintiffs Plausibly Allege Defendant's Fraudulent Intent ................................. 22

IX.  Plaintiff's Unjust Enrichment Claims are Adequately Pleaded ........................... 24

X.   Plaintiffs Adequately Plead Injury ............................................................ 24

XI.  The Court has Specific Personal Jurisdiction over Non-New York
     Class Members ............................................................................................ 25

     A.   Absent Class Members' Claims Are Not Relevant To Specific
          Personal Jurisdiction ......................................................................... 25

     B.   *BMS* Does Not Support Dismissing the Claims of the Non-New
          York Class Members .......................................................................... 27

XII. Plaintiff has Standing to Seek Injunctive Relief ...................................... 28

Conclusion ............................................................................................................ 29

**Table of Authorities**

**Cases**

*Ackerman v. Coca-Cola Co.*,
   No. 09-cv-395, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) ........................................... 8, 29

*Aliano v. Quaker Oats Co.*,
   No. 16-cv-3087, 2017 WL 56638
   (N.D. Ill. Jan. 4, 2017) ........................................................................................................ 25

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................. 1

*Avola v. Louisiana-Pacific Corp.*,
   991 F.Supp.2d 381 (E.D.N.Y. 2013) .................................................................................. 16

*Belfiore v. Procter & Gamble Co.*,
   F.Supp.3d 440 (E.D.N.Y. 2014) ......................................................................................... 28

*Belfiore v. Procter & Gamble Co.*,
   No. 14-cv-4090, 311 F.R.D. 29, 2015 WL 5781541 (E.D.N.Y. Oct. 5, 2015) ........................ 3

*Bell Atl. Co. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................. 1

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................. 2

*Bourbia v. SC Johnson & Son, Inc.*,
   375 F.Supp.3d 454 (S.D.N.Y. 2019) .................................................................................. 17

*Brass v. American Film Technologies, Inc.*,
   987 F.2d 142 (2d Cir. 1993) ............................................................................................... 19

*Brenner v. Procter & Gamble Co.*,
   No. 16-cv-1093, 2016 WL 8192946
   (C.D. Cal. Oct. 20, 2016) ..................................................................................................... 5

*Bristol-Myers Squibb Co. v. Superior Court of Cal.*,
   137 S. Ct. 1773 (2017) ........................................................................................................ 25

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ............................................................................................................. 26

*Campbell v. Freshbev LLC*,
   322 F.Supp.3d 330 (E.D.N.Y. 2018) .................................................................................. 27

*Chester v. TJX Companies, Inc.*,
    No. 15-cv-01437, 2016 WL 4414768 (C.D. Cal. Aug. 18, 2016).............................................. 5

*Colella v. Atkins Nutritionals, Inc.*,
    348 F.Supp.3d 120 (E.D.N.Y. 2018)................................................................... 15, 20

*Corsello v. Verizon N.Y., Inc.*,
    18 N.Y.3d 777 (2012).......................................................................................... 24

*Daniel v. Mondelez Int'l, Inc.*,
    287 F.Supp.3d 177 (E.D.N.Y. 2018)................................................................... 24

*Delgado v. Ocwen Loan Servicing Company, LLC*,
    No. 13-cv-4427, 2014 U.S. Dist. LEXIS 135758,
    2014 WL 4773991 (E.D.N.Y. Sept. 23, 2014)..................................................... 29

*Dolori Fabrics, Inc. v. Limited, Inc.*,
    662 F.Supp.1347 (S.D.N.Y. 1987)...................................................................... 21

*Elkind v. Revlon Consumer Prods. Corp.*,
    14-cv-2484, 2015 WL 2344134
    (E.D.N.Y. May 14, 2015)..................................................................................... 12

*Famous Horse Inc. v. 5th Ave. Photo Inc.*,
    624 F.3d 106 (2d Cir. 2010)................................................................................. 1

*Famular v. Whirlpool Corp.*,
    No. 16-cv-944, 2017 WL 2470844 (S.D.N.Y. June 6, 2017)........................... 22, 25

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013)................................................................................. 3

*Foman v. Davis*,
    371 U.S. 178 (1962)............................................................................................. 29

*Gant v. Wallingford Bd. of Educ.*,
    69 F.3d 669 (2d Cir. 1995)................................................................................... 1

*Gitson v. Trader Joe's Company*,
    No. 13-cv-01333, 2013 WL 5513711 (N.D. Cal. Oct. 4, 2013)............................. 6

*Gonzalez v. Costco Wholesale Corp.*,
    No. 16-cv-2590, 2018 WL 4783962 (E.D.N.Y. Sept. 29, 2018)...................... 18, 27

*Goshen v. Mutual Life Ins. Co. of N.Y.*,
    774 N.E.2d 1190, 98 N.Y.2d 314 (2002) ............................................................ 2

*Gubala v. CVS Pharmacy, Inc.*,
No. 14-cv-09039, 2015 U.S. Dist. LEXIS 77509, 2015 WL 3777627
(N.D. Ill. June 16, 2015) ............................................................................... 15

*Hanley v. Chicago Title Ins. Co.*,
No. 12-cv-4418, 2013 WL 3192174 (S.D.N.Y. June 24, 2013) ............................................. 1

*Henderson v. Gruma Corp.*,
No. 10-cv-04173, 2011 U.S. Dist. LEXIS 41077,
2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ..................................................... 10

*Hubbard v. Gen. Motors Corp.*,
No. 95-cv-4362, 1996 WL 274018 (S.D.N.Y. May 22, 1996) ............................... 19

*In re Rezulin Products Liability Litigation*,
133 F.Supp.2d 272 (S.D.N.Y. 2001) ................................................................ 18

*In re SKAT Tax Refund Scheme Litig.*,
356 F.Supp.3d 300 (S.D.N.Y. 2019) ............................................................... 24

*In re: Chinese-Manufactured Drywall Prods. Liab. Litig.*,
No. 09-md-02047, 2017 WL 5971622 (E.D. La. Nov. 30, 2017) ........................... 26

*Iron Workers Dist. Council of W. N.Y. v. D.C. Scott, Inc.*,
474 F.Supp.2d 467 (W.D.N.Y. 2007) ............................................................... 19

*Izquierdo v. Mondelez Int'l, Inc.*,
No. 16- cv-04697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ........................... 25

*Jackson v. Bank of Am., N.A.*,
No. 16-cv-787, 2018 WL 2381888 (W.D.N.Y. May 25, 2018) ............................. 26

*Jensen v. Cablevision Sys. Corp.*,
No. 17-cv-00100, 2017 WL 4325829 (E.D.N.Y. Sept. 27, 2017) .......................... 27

*Kelly v. Cape Cod Potato Chip Co.*,
81 F.Supp.3d 754 (W.D. Mo. 2015) .................................................................. 4

*Koehler v. Litehouse, Inc.*,
2012 U.S. Dist. LEXIS 176971, 2012 WL 6217635
(N.D. Cal. Dec. 13, 2012) ............................................................................... 29

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160 (2d Cir. 2015) ........................................................................... 29

*Manchouck v. Mondeléz Int'l Inc.*,
No. 13-cv 02148, 2013 U.S. Dist. LEXIS 138877,
2013 WL 5400285 (N.D.Cal. Sept. 26, 2013) .................................................... 10

*Mantikas v. Kellogg Co.*,
  910 F.3d 633 (2d Cir. 2018) ..................................................................... 8

*McKinnis v. Kellogg USA*,
  No. 07-cv-2611, 2007 WL 4766060
  (C.D. Cal. Sept. 19, 2007) .................................................................... 3, 4

*Nashville Syrup Co. v. Coca Cola Co.*,
  215 F. 527 (6th Cir. 1914) ....................................................................... 3

*Neri v. R.J. Reynolds Tobacco Co.*,
  No. 98-cv-371, 2000 WL 33911224 (N.D.N.Y. Sept.28, 2000) ........................... 20

*Niedernhofer v. Wittels*,
  No. 17-cv-4451 (S.D.N.Y. July 31, 2018) .................................................... 25

*O'Brien v. Nat'l Prop. Analysts Partners*,
  936 F.2d 674 (2d Cir. 1991) ................................................................... 24

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
  85 N.Y.2d 20 (1995) ............................................................................... 2

*Panda Capital Corp. v. Kopo Int'l, Inc.*,
  242 A.D.2d 690, 662 N.Y.S.2d 584
  (App. Div. 2d Dep't 1997) ..................................................................... 21

*Pardini v. Unilever United States, Inc.*,
  961 F. Supp. 2d 1048 (N.D. Cal. 2013) ..................................................... 15

*Paulino v. Conopco, Inc.*,
  No. 14-cv-5145, 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ........................... 20

*Peviani v. Hostess Brands, Inc.*,
  750 F. Supp. 2d 1111 (C.D. Cal. 2010) ..................................................... 15

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ............................................................................. 26

*Plumbers & Steamfitters Local 137 Pension Fund v. American Express Co.*,
  No. 15-cv-5999, 2017 WL 4403314 (S.D.N.Y. Sept. 30, 2017) .......................... 23

*Quinn v. Walgreen Co.*,
  958 F.Supp.2d 533 (S.D.N.Y. 2013) ........................................................ 20

*Randy Knitwear, Inc. v. American Cyanamid Co.*,
  11 N.Y. 2d 5 (1962) ............................................................................. 22

vii

*Red v. Kraft Foods, Inc.*,
   No. 10-cv-1028, 2012 U.S. Dist. LEXIS 164461,
   2012 WL 5504011 (C.D. Cal. Oct.25, 2012) ........................................................ 10

*Rubenstein v. Neiman Marcus Grp. LLC*,
   687 F. App'x 564 (9th Cir. 2017).......................................................................... 6

*Salters v. Beam Suntory, Inc.*,
   No. 14-cv-659, 2015 WL 2124939
   (N.D. Fla. May 1, 2015) ........................................................................................ 4

*Segedie v. Hain Celestial Grp., Inc.*,
   No. 14-cv-5029, 2015 WL 2168374 (S.D.N.Y. May 7, 2015) ............................. 18

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994) ................................................................................ 23

*Singleton v. Fifth Generation, Inc.*,
   No. 15-cv-474, 2016 WL 406295 (N.D.N.Y. Jan. 12, 2016)................................ 20

*U.S. ex rel. Polansky v. Pfizer, Inc.*,
   No. 04-cv-0704, 2009 WL 1456582 (E.D.N.Y. May 22, 2009) ........................... 23

*Weisman v. LeLandais*,
   532 F.2d 308 (2d Cir. 1976) .................................................................................. 1

*Werbel v. Pepsico, Inc.*,
   No. 09-cv-4456, 2010 WL 2673860
   (N.D. Cal. July 2, 2010) ............................................................................... 3, 4, 5

*White v. Just Born Inc.*,
   No. 17-cv-04025, 2017 WL 3130333 (W.D. Mo. July 21, 2017).......................... 11

*Williams v. Calderoni*,
   2012 U.S. Dist. LEXIS 28723 (S.D.N.Y. Mar. 1, 2012),
   *aff'd*, *Williams v. Schwartz*, 529 F. App'x 89 (2d Cir. 2013) .................................... 2

*Woods v. Maytag Co.*,
   807 F.Supp.2d 112 (E.D.N.Y. 2011)....................................................................... 1

*Yee Ting Lau v. Pret A Manger (Usa) Limited*,
   No. 17-cv-5775 (S.D.N.Y. Sept. 28, 2018) .......................................................... 24

### Statutes

N.Y. General Business Law § 349 ............................................................................... 2

N.Y. General Business Law § 350 ............................................................................... 2

N.Y. U.C.C. § 1-202(a) ................................................................................. 21

N.Y. U.C.C. § 2-313(1)(a) ............................................................................ 17

N.Y. U.C.C. § 2-318 ..................................................................................... 22

N.Y. U.C.C. § 2-607 ..................................................................................... 19

N.Y. U.C.C. § 2-607(3) ........................................................................... 20, 21

N.Y.U.C.C. § 2-313(1)(b) ............................................................................. 16

### Rules

Fed. R. Civ. P.  8(d) .................................................................................... 24

Fed. R. Civ. P. 12(b)(6) ................................................................................. 1

Fed. R. Civ. P. 15(a)(2) ............................................................................... 29

### Regulations

21 C.F.R. § 101.13(b) .................................................................................. 13

21 C.F.R. § 101.13(b)(1) .............................................................................. 13

21 C.F.R. § 101.18(b) .................................................................................... 8

21 C.F.R. § 101.22(i) ................................................................................... 16

# Introduction

Plaintiffs submits this memorandum of law in opposition to defendant's Motion to Dismiss the First Amended Complaint ("FAC"), and Memorandum of Law in Support ("Def. MOL").  For the reasons below, the motion should be denied it in its entirety.

## I.    Legal Standard on Motion to Dismiss

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (quoting *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir. 1976)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007).

### A.    Factual Allegations Should be Accepted as True

A court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Hanley v. Chicago Title Ins. Co.*, No. 12-cv-4418, 2013 WL 3192174, at *2 (S.D.N.Y. June 24, 2013) (citing *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and… determine whether they plausibly give rise to an entitlement of relief." *Woods v. Maytag Co.*, 807 F.Supp.2d 112, 118–19 (E.D.N.Y. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

### B.    Plaintiff has Shown that it is Plausible a Reasonable Consumer Would be Misled

Plaintiffs need only assert factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's claim to relief must be "plausible on its face," *Id.* at 570, and a complaint fails if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557.

However, "[t]he plausibility standard [on a motion to dismiss] is not akin to a probability requirement." *Iqbal*, 556 U.S. at 559 129 S. Ct. at 1937. Plaintiffs need only "nudge" their allegations "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 548; *Williams v. Calderoni*, 2012 U.S. Dist. LEXIS 28723, at *20 (S.D.N.Y. Mar. 1, 2012) (in evaluating a complaint under a Rule 12(b)(6) standard, the Court need not accept "implausible allegations or legal conclusions expressed as facts"), *aff'd*, *Williams v. Schwartz*, 529 F. App'x 89 (2d Cir. 2013).

C.   New York General Business Law 349 and 350 Provide Relief Where a Defendant Engages in Deceptive Acts

The representations violate New York General Business Law ("GBL") §§ 349 and 350, prohibiting "[d]eceptive acts or practices" and "[f]alse advertising."

To state a claim pursuant to GBL §§ 349 and 350, a plaintiff must allege that: (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff was injured as a result. *See, e.g.*, *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995). Whether a particular act or practice is deceptive is intensely factual, and, therefore, motions to dismiss are disfavored. *See, e.g.*, *Sims v. First Consumers Nat. Bank*, 303 A.D. 2d 288, 289, 758 N.Y.S. 2d 284, 285-286 (1st Dept. 2003).

The purpose of these laws is "to secure an 'honest market place' where 'trust,' and not deception, prevails." *Goshen v. Mutual Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195, 98 N.Y.2d 314, 324 (2002) (citation omitted).

2

D.     Defendant's Label Statements Should be Viewed in Context

Though defendant asserts the issues before the Court are unambiguous, a closer look reveals nuance and context, requiring a fact-intensive analysis. *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ( "[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."); *Belfiore v. Procter & Gamble Co.*, No. 14-cv-4090, 311 F.R.D. 29, 38, 2015 WL 5781541, at *35 (E.D.N.Y. Oct. 5, 2015) (to establish a prima facie case under GBL § 349, "The entire mosaic is viewed rather than each tile separately.").

## II.     Defendant's "Compound Name" Argument is Illogical and Misapplied

The FAC alleges the Products are misleading because "the term 'graham' modifies 'crackers' such that graham flour will presumably be the predominant or exclusive flour type."

According to defendant, expecting a product identified as "grahams" or a "graham cracker" to contain more whole grain than white flour is akin to expecting Coca Cola to contain an actual "kola nut," "Froot Loops" to contain real fruit and to expect a "crunch berry" to refer to a novel berry instead of puffed corn. *Nashville Syrup Co. v. Coca Cola Co.*, 215 F. 527, 532 (6th Cir. 1914) (declining to find that the trademarked name, Coca Cola, was misleading as to the amount of coca leaves or cola nuts because this question "must be decided as of the time of adoption."); *McKinnis v. Kellogg USA*, No. 07-cv-2611, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) (implausible to expect the trademarked term "FROOT LOOPS" to mean breakfast cereal contained real fruit); *Werbel v. Pepsico, Inc.*, No. 09-cv-4456, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (implausible to expect the trademarked term "Crunch Berries" to refer to actual berries).

Defendant's comparison of a product containing the name of an actual, established food – "graham" – with "FROOT" and "Crunch Berries" fails because the latter are obvious fanciful names, which by definition are "overimaginative and unrealistic" – such as "moon pie" or

3

"Hershey's Kisses." *See, e.g.*, *Werbel v. Pepsico, Inc.*, No. 09-cv-4456, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (trademark term "Crunch Berries" did not refer to actual berries); *McKinnis v. Kellogg USA*, No. 07-cv-2611, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) (trademark term "FROOT LOOPS" did not describe or represent the cereal ingredients contained fruit).

Defendant claims it is "hyper-literal" for consumers to place "reliance on the dictionary definition of 'graham cracker' to suggest the presence of graham flour." Def. Mem. citing *Salters v. Beam Suntory, Inc.*, No. 14-cv-659, 2015 WL 2124939, at *2 (N.D. Fla. May 1, 2015) (dictionary definition of "handmade" was implausible as applied to mass-produced whiskey); *Kelly v. Cape Cod Potato Chip Co.*, 81 F.Supp.3d 754, 760 (W.D. Mo. 2015) ("'natural' . . . is not plausible because the Chips are processed foods, which of course do not exist or occur in nature.").

However, plaintiffs do not seek something unrealistic, such as mass-produced, handmade whiskey, low price truffle oil or potato chips which grow in a sliced form.  In contrast to the fanciful "FROOT LOOPS" or imaginary "Crunch Berries," there are no "tells" or obvious indications that "graham cracker" does not accurately describe the Products, such as a playful misspelling, i.e., "Grams."

Graham flour is a specific standardized ingredient which has had a common consumer understanding for over 50 years.  FAC ("Graham flour is a coarse-ground "unbolted" flour, made from the whole grain"); *fn* 12 citing 21 C.F.R. § 137.200(a) ("Whole wheat flour, graham flour, entire wheat flour is the food prepared by so grinding cleaned wheat").  There are no similar standardized foods such as "Froot" nor any record of "Crunch Berry" farming.

And in contrast to the trademarked terms offered by defendant, the expectation of a cracker containing 51% graham flour is hardly implausible, given that defendant and other companies sell

products identified as "graham crackers" which conform to their description.  Compare with *Nashville Syrup Co.*, 215 F. at 532 (expectation that cola contains significant amount of coca leaves, the source of the drug cocaine, is implausible); *Werbel v. Pepsico, Inc.*, No. 09-cv-4456, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (trademark term "Crunch Berries" did not refer to actual berries); *McKinnis*, 2007 WL 4766060, at *4 (implausible for reasonable consumer to expect the product contained real fruit since name of the food was "SWEETENED MULTIGRAIN CEREAL"); *Werbel*, 2010 WL 2673860, at *3 (expectation of product containing a fruit called "crunch berries" implausible since product name "SWEETENED CORN & OAT CEREAL" resolved any ambiguity).

### III.   Plaintiffs and Reasonable Consumers are Deceived by Defendant's "Whole Grain" Claims

#### A.   Expert Guidance Shows Defendant's Statements are Misleading

Plaintiffs asserted in their Complaint that the federal agencies with expertise on the marketing and labeling of food products have determined that "Whole Grain" claims, exactly like those at issue here, are likely to deceive reasonable consumers.  In an effort to avoid the clear import of the FDA Draft Guidance and the FTC Comments cited in the FAC, defendant merely ignores it.

These statements are the considered opinions and recommendations of experts who set standards for good labeling and deceptive advertising, and therefore have persuasive value on the very issue of the plausibility of Plaintiffs' allegations. *See Brenner v. Procter & Gamble Co.*, No. 16-cv-1093, 2016 WL 8192946, at *5 (C.D. Cal. Oct. 20, 2016) (denying motion to dismiss, concluding that FTC communication "raises a plausible inference that a significant portion of consumers could believe that Defendant's . . . claim was false or misleading"); *Chester v. TJX Companies, Inc.*, No. 15-cv-01437, 2016 WL 4414768, at *10–11 (C.D. Cal. Aug. 18, 2016)

(denying motion to dismiss, finding that FTC guidelines support the plaintiff's claim that a consumer would reasonably find the defendants' representations to be misleading or deceptive); *Gitson v. Trader Joe's Company*, No. 13-cv-01333, 2013 WL 5513711, at \*10 (N.D. Cal. Oct. 4, 2013) (denying motion to dismiss, concluding that FDA's guidance and warning letters support plaintiff's claim); *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017) (reversing district court's dismissal of complaint, finding that plaintiff's allegation that FTC guidelines were violated supported her plausible claim that the defendant made false or misleading statements).

On substance, both the FTC Staff Comments and the FDA Guidance directly support Plaintiffs' allegations of deception from defendant's unqualified "whole grain" claim through the Product name, "Grahams" and "Graham Crackers" and its "WITH N grams WHOLE GRAIN per serving" claim.

The Staff Comments state:[1]

- As the FDA's draft guidance recognizes, there is potential for consumers to be misled or confused by unqualified "whole grain" claims for products that contain a mixture of whole grain and refined grain. Many consumers may interpret such unqualified claims to mean that all or nearly all of the grain in the product is whole grain.

- The FTC staff believes that many consumers may find it difficult, if not impossible, to translate a quantitative statement such as "10 grams whole grain" into meaningful information about how much of their recommended daily amount of whole grain they will receive from a serving of food.

- On some food labels, for instance, the words "whole grain" appear in large banner type on the front label while the words "made with" presumably meant to qualify the 'whole grain' banner, are in substantially smaller type. This may be a method that companies use to imply that their products are 100% whole grain, when they are not.

---

[1] Matter of Draft Guidance for Industry and FDA Staff: Whole Grains Label Statements, Docket No. 2006-0066 (Apr. 18, 2006) ("FTC Staff Comments")

- Many reasonable consumers will likely understand "whole grain" to mean that all, or virtually all, of the food product is whole grain, or that all of the grain ingredients in the product are whole grains.

- The FTC staff believes that additional guidance, in the form of percentage and minimum content standards, will ensure that when consumers choose products labeled as "whole grain" or "made with whole grain," or similar claims, they will be getting a meaningful amount of whole grain.  FTC Staff Comments at 3, 7, 11, 13, 15 (emphasis added).

Plaintiffs' allegations are consistent with the FDA Guidance, which states:[2]

- Manufacturers can make factual statements about whole grains on the label of their products such as "100% whole grain" (as percentage labeling under 21 CFR 102.5(b)) or "10 grams of whole grains" (21 CFR 101.13(i) (3)) provided that the statements are not false or misleading under section 403(a) of the Federal Food, Drug, and Cosmetic Act and do not imply a particular level of the ingredient, i.e., "high" or "excellent source."

- Depending on the context in which a "whole grain" statement appears on the label, it could be construed as meaning that the product is "100 percent whole grain."

- We recommend that pizza that is labeled "whole grain" or "whole wheat" only be labeled as such when the flour ingredient in the crust is made entirely from whole grain flours or whole wheat flour, respectively. Similarly, we recommend that bagels, labeled as "whole grain" or "whole wheat" only be labeled as such when bagels are made entirely from whole grain flours or whole wheat flour, respectively.

B.    "Grahams" and "Graham Crackers" are Unqualified Whole Grain Claims

Plaintiffs have plausibly alleged that the word "GRAHAMS" in extra-large font on the Nabisco Products and as the statement of identity for the Honey Maid Products would lead a reasonable consumer to the conclusion that the Products are all or predominantly whole grain.

In its brief arguing that "grahams" means something different from what reasonable consumers expect, defendant disavows that "grahams" is a reference to the Product's ingredients Def. at 1 ("Plaintiffs' allegation that the terms "grahams" or "graham crackers" are statements

---

[2] Draft Guidance for Industry and FDA Staff: Whole Grain Label Statements at 1, 3, 4 (Feb. 17, 2006) ("FDA Guidance") (emphasis added).

about the *ingredients* in the product ignores context and common sense").

However, the use of whole grain claims in product names has been found to be misleading by most bodies who have considered the facts. FAC ¶ 88 ("FDA has prevented misleading whole grain representations like those described in the Products where whole grain claims are in the product names – "HiHo Deluxe WHOLE WHEAT Crackers" and "Krispy WHOLE WHEAT Saltine Crackers," when they were mainly white flour."); *Mantikas v. Kellogg Co.*, 910 F.3d 633, 638 (2d Cir. 2018) (reasonable consumers can be misled by prominent "Whole Grain" to expect products are exclusively or predominantly whole grain even where the front label and ingredient list accurately discloses the products consist primarily of enriched white flour).

C.  "Grahams" Emphasizes the Whole Grain Component and Omits Reference to the Other, Predominant Ingredient

Defendant's use of "grahams" and "graham crackers" to identify and describe the Products is misleading because "includes one of the product's ingredients (graham flour) but fails to mention one other notable ingredient (white flour)." FAC 29. This type of labeling is deceptive to consumers and is contrary to law. *Ackerman v. Coca-Cola Co.*, No. 09-cv-395, 2013 WL 7044866, at *13 (E.D.N.Y. July 18, 2013) ("The labeling of a food which contains two or more ingredients may be misleading by reason . . . of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients . . . ." (quoting 21 C.F.R. § 101.18(b) );

Moreover, independent of the general prohibition under the NLEA against false or misleading labeling, Plaintiffs' state law claims align with 21 C.F.R. §§ 101.18(b), 102.5(b)–(c), which prohibit the naming of foods so as to create an erroneous impression about the presence or absence of ingredient(s) or component(s) therein. *See, e.g.*, 21 C.F.R. § 101.18(b) ("The labeling of a food which contains two or more ingredients may be misleading by reason . . . of the

designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients . . . .")

Plaintiffs allege that enriched flour is a characterizing ingredient of the Products that has a material bearing on their purchasing decision. The common or usual name of the product, "grahams" or "graham crackers" misleadingly fails to mention the presence of this characterizing ingredient and creates the misimpression that whole grain is present in the product in an amount greater than is actually the case.  Thus, Plaintiffs allege the Products' names violate sections 101.18(b) and 102.5(b)–(c).

### D.   "Made With" Food Labeling Cases Cannot Overcome Deception of the Primary Ingredient

Defendant asserts that it is never misleading to indicate a product is "made with" a particular ingredient "when the product does, in fact, contain that ingredient." Def.-App. Opp. Br. at 24. Taken to its logical conclusion, Defendant's argument would allow a manufacturer to make a conspicuous "made with" claim, no matter how prominent the claim, so long as the product contained even 0.01% of that ingredient. That is not the reasonable consumer standard applied by courts. *See*, *e.g.*, *Brenner*, 2016 WL 8192946, at *6 ("no basis in the case law to establish a bright-line rule" that natural claims require "100%" or "all" in order to be actionable).

Defendant's position – "it is doubtful that most consumers even know what "graham flour" is, let alone that their decisions about which graham crackers to buy are based on the amount of "graham flour"" – is incredulous.  Instead, it uses a synonym for whole grain flour for a reason – to entice health-conscious consumers to buy its Products – and it is disingenuous at best to assert otherwise and/or to disclaim its effectiveness.

Other cases relied on by Defendant are similarly unavailing, for, among other reasons, they concern "made with" claims where the ingredient at issue was a flavoring or garnish, not the

primary ingredient, as is the case here.

In these cases, courts dismissed the claims because (1) the ingredient at issue was a flavoring or garnish, not the primary ingredient and (2) the plaintiffs failed to explain *how* the "made with" claim was misleading. *Manchouck v. Mondeléz Int'l Inc.*, No. 13-cv 02148, 2013 U.S. Dist. LEXIS 138877, at \*4, 2013 WL 5400285, at \*4 (N.D.Cal. Sept. 26, 2013) ("Plaintiff has not plausibly alleged *why* the [truthful] statement "made with real fruit" would not include mechanically separated fruit purée"); *Henderson v. Gruma Corp.*, No. 10-cv-04173, 2011 U.S. Dist. LEXIS 41077, 2011 WL 1362188, at \* 17 (C.D. Cal. Apr. 11, 2011) ("Plaintiffs do not provide a specific argument as to *how* this statement [made with garden vegetables] is misleading."); *Red v. Kraft Foods, Inc.*, No. 10-cv-1028, 2012 U.S. Dist. LEXIS 164461, at \*3, 2012 WL 5504011, at \*3 (C.D. Cal. Oct.25, 2012) ("made with real vegetables" does not mean a product is "composed of primarily fresh vegetables" and thus no support for plaintiffs' claims that the representations suggested the crackers were healthy).

Context is crucial here – defendant's graham flour/whole grain claims concern the *primary* ingredient of the product such that it is reasonable to expect it will be present in greater amounts than it actually is. *Fink v. Time Warner Co.*, 714 F.3d 739 (2d Cir. 2013). And the context here supports Plaintiffs' allegations and differentiates this case from those generally cited by Defendant.

### IV.   Defendant's Disclaimers Fail to Resolve Ambiguity and are Inconspicuous

   A.   <u>Number of Whole Grains Per Serving Fails to Inform Consumers of Refined Grains</u>

The number of grams of whole grain per serving, standing alone, is far from a clear indication of the amount and types of grain in a product, let alone an indication that whole grain is a minority ingredient in the Products. Moreover, a reasonable consumer does not know how much of a serving is devoted to "grains" – whole, refined or otherwise – as opposed to other ingredients

including starches and sugars.  Nor does a reasonable consumer wield a calculator to determine the percent of whole grains per serving.

Plaintiffs have alleged that the grams whole grain per serving are more than just uninformative, they are misleading, because the reasonable consumer is not familiar with the recommended daily amount of whole grain in grams.  FTC Staff Comments at 7 ("[M]any consumers may find it difficult, if not impossible, to translate a quantitative statement such as '10 grams whole grain' into meaningful information.").

Defendant insists that consumers read the small print and that they would realize from the ingredient list whole grains comprise less than half of the grains in the crackers.  In so holding, courts recognize the realities of grocery purchasing decisions. See *White v. Just Born Inc.*, No. 17-cv-04025, 2017 WL 3130333, at \*4–5 (W.D. Mo. July 21, 2017) ("Consumers spend an average of 13 seconds making an in-store purchasing decision.  The decision is heavily dependent on a product's packaging   ").

### B.   Defendant Cannot Escape Liability by Re-Classifying the Products as Cookies

The FAC offered considerable support for consumer expectation that a product labeled "Graham Crackers" was by definition and logic, distinct from a cookie.  FAC 16 ("Graham crackers are distinct from cookies and are marketed through different channels and are classified in different categories for the purposes of retail distribution."), 18 ("In its sales to institutional customers such as schools, community organizations and corporations, the Products are also classified as crackers).

Faced with the prospect of injunctive relief, defendant's eleventh-hour effort has sought to re-classify the Products as a square, crunchy, mildly sweet "type of cookie." Unsurprisingly, defendant's "cookie" criteria is identical to how the FAC described the difference between these

two product types.  Compare Def. at 1 ("It is commonly understood that a "graham cracker" is a honey-colored cookie with a characteristic sweet taste, often in a perforated rectangular shape") with FAC 19-20 ("consumers know that cookies contain: exclusively white, refined flour, refined sugar, confectionary inclusions like chocolate chips, a round shape and chewy consistency ….products sold as crackers contain: less white refined flour than cookies, less sugar, a salty or savory instead of sweet flavor, a flat shape and a crispy or crunchy texture.").

**V.   Defendant's Preemption Arguments are Unavailing and Misapplied**

Defendant advances the standard preemption arguments to escape liability.  21 U.S.C. § 343-1(a)(1)-(5) ("no state or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce" where federal standards are established); *Ackerman*, 2010 WL 2925955, at *6 ("[T]here are two ways plaintiffs may escape [the FDCA's] preemptive force: (1) if the plaintiffs' claims seek to impose requirements that are identical to those imposed by the FDCA; or (2) if the requirements plaintiffs seek to impose are not with respect to claims of the sort described in [the Act].").

In the context of the FDCA, "express preemption and implied pre-emption create a 'narrow gap' through which a plaintiff's state-law claim must fit if it is to escape express or implied pre-emption." *Elkind v. Revlon Consumer Prods. Corp.*, 14-cv-2484, 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015).

   A.   Defendant's Whole Grain Statements are Not Express Nutrient Content Claims
        Because a "Whole Grain" is not a Nutrient

Defendant cites no controlling authority for the proposition that any of the "WHOLE GRAIN" statements at issue are nutrient content claims expressly permitted by NLEA.

Defendant contends that its "Whole Grain" statements are nutrient content claims that are expressly permitted and preempted.  Nowhere does NLEA provide that "Whole Grain" is a

"nutrient" for purposes of express or implied nutrient content claims. *See* 21 C.F.R. § 101.13(b) (nutrient content claim "expressly or implicitly characterizes the level of a nutrient of the type ***required to be in nutrition labeling*** under 101.9 or 101.36" (emphasis added)). Defendant does not argue, nor can it, that it is required to make any statements or disclosures about "Whole Grain" in contrast to "nutrients" such as sodium or dietary fiber.

Defendant states that because the FDA permits an "expressed nutrient content claim," its statement about the number of whole grains per serving is preempted because "Made with 8g of Whole Grain per 31g Serving" is such a claim.  Def. Mem. At 14 citing *Red v. Kraft Foods, Inc.*, 754 F. Supp. 2d 1137, 1139 (C.D. Cal. 2010) and 21 C.F.R. § 101.13(b)(1) ("An expressed nutrient content claim is any direct statement about the level (or range) of a nutrient in the food, e.g., "low sodium" or "contains 100 calories."").

In *Red*, the *plaintiffs* alleged the declaration of whole grains per serving were express nutrient content claims and that the "whole grain statements are misleading because they falsely suggest the Kraft products are healthy."  Plaintiffs' Opposition To Defendant Kraft Foods Global, Inc.'s Motion To Dismiss, Dkt. 32, June 9, 2010 at p.14 ("provides 5g whole grain" and "Contains 6 Grams Whole Grain! per serving" are express nutrient content claims, see 21 C.F.R. § 101.13(b).").

Finally, the cases relied upon by Defendant are inapposite. In *Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111 (N.D. Cal. 2010), the plaintiffs alleged that Quaker's "Chewy Bars" labeling was misleading because it represented the bars were "made with whole grain oats," which, according to the plaintiffs, implied the products were "wholesome and healthful," even though the products also contained "dangerous amounts" of artificial transfat.

The court held that federal law preempted these claims because they would effectively treat

transfat as a "disqualifying nutrient," even though the FDA had "expressly decided *not* to recognize trans fats as a disqualifying nutrient." *Id.* at 1122. That fact pattern bears no resemblance to the facts here. Plaintiffs do not seek to treat enriched flour as a disqualifying nutrient; rather, they allege Defendant represents all or most of the grain in the Products as "whole grains" through the term "grahams" or "graham crackers" when in fact it is primarily nutritionally inferior, refined grain.

Plaintiffs do not concede that any part of the challenged labelling is pre-empted. And removal of the Grams Claims, the statements that Defendant argues are expressly permitted by the FDA, ***bolsters*** Plaintiffs' allegations of deception rather than defeating them, in stark contrast to *Hairston*.

B.   Implied Preemption is Not Applicable because the Challenged Claims are not FDA Requirements

Defendant cannot credibly rely on implied preemption since the labeling statements alleged to be misleading are not required by federal regulations. *In re PepsiCo, Inc., Bottled Water Mktg. and Sales*, 588 F.Supp.2d 527, 530 (S.D.N.Y. 2008) (implied preemption only "applicable 'where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'").

There is no obstacle to defendant modifying its labeling to represent that enriched flour and sugar are the predominant flour and sweetener in the Products, and truthfully disclosing the proportion of refined grains. *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *19, 29 (finding that plaintiff's claim – "that that the *fortification* of sugar water – rather than the sugar content itself -- precludes defendants from claiming or implying that vitaminwater is a healthy beverage" while also noting that "any claim solely premised on the notion that vitaminwater's high sugar

content made its health or implied nutrient content claims misleading" was barred by preemption"); *Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048, 1054-1056 (N.D. Cal. 2013) (where defendant's calculated serving sizes were consistent with FDA regulations, plaintiff's claims that the products were "fat free" and "zero calorie" were misleading were preempted since these were based on the FDA-mandated serving size"); *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1119 (C.D. Cal. 2010) (display of nutritional information in the manner specified by the FDA cannot be challenged as "misleading" because a plaintiff may not "enjoin the use of the very term permitted by the NLEA and its accompanying regulations"); *Gubala v. CVS Pharmacy, Inc.*, No. 14-cv-09039, 2015 U.S. Dist. LEXIS 77509, at *10-11, 2015 WL 3777627, at *10-11 (N.D. Ill. June 16, 2015) (allegations preempted where they would require CVS to modify the mandated Nutrition Facts to identify each source of protein when doing so "would not be identical to the labeling requirements imposed by federal law."); *Colella v. Atkins Nutritionals, Inc.*, 348 F.Supp.3d 120, 135-36 (E.D.N.Y. 2018) (a claim alleging that a "net carbs" statement was misleading was preempted since FDA never prohibited that statement).

## VI.   Emphasis on Honey and Omission of Artificial Flavor from Front Labels is Misleading

### A.   Despite Expectations of Graham Cracker Products, Sugar is Main Sweetener

The Products deceptively promote honey on the front label, as consumers know this is the primary sweetening agent in graham cracker products.  However, honey is present in a miniscule amount, less than even canola oil.

### B.   Assuming a Honey-Invert Sugar Blend, Promotion of Honey without Sugar is Misleading

Defendant argues that regardless of its use of a honey-sugar combination ingredient, the labeling requirements are not applicable where it is used as an ingredient in a finished food.  While

15

this combination ingredient is listed correctly on the ingredient list, separated into its components, it is misleading to promote the less predominant component on the front label.

      C.    <u>Failure to Declare Artificial Flavor on Front Label</u>

The front label of the Honeymaid Products makes direct representations with respect to the primary recognizable flavor, through the honey dipper, the bee and the product name, such that honey is the Product's characterizing flavor.  21 C.F.R. § 101.22(i).

Though honey is traditionally a sweetener, it also has strong flavoring properties and can be considered a flavor.  In fact, its de minimis presence in the Products – less than 2% according to credible analysis – is indicative it is used not as a sweetener for its nutritional purposes but as a flavoring.

Given that the Honeymaid Products contain "artificial flavor" which could only be in the semblance of honey, since the representations are bereft of references to other flavor compounds, the front labels are misleading by failing to declare the presence of the artificial flavor next to the name of the food. 21 C.F.R. § 101.22(i)(2).

The failure to declare the presence of artificial flavor will cause the consumer to expect the food to contain more honey than it actually does.

**VII.  Plaintiffs' Express Warranty Claims are Sufficient**

To establish a breach of express warranty, a plaintiff must show "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Goldemberg*, 8 F.Supp.3d at 482; *Avola v. Louisiana-Pacific Corp.*, 991 F.Supp.2d 381, 391 (E.D.N.Y. 2013) (citing N.Y. U.C.C. § 2-313 (1)(a)); N.Y.U.C.C. § 2-313(1)(a)-(b)

("affirmation of fact or promise" or "description of the goods" which is "made part of the basis of the bargain creates an express warranty").

A.    <u>Labeling Affirmed the Products Contained More Graham than Enriched Flour, Non-Sugar Sweetening Agents as Primary Sweetener and No Artificial Flavors</u>

The FAC stated that the Products contained affirmations and descriptions which warranted they contained (1) more graham, or whole grain flour than enriched flour, (2) more honey than sugar in the Honeymaid Products and (3) no artificial flavors. ¶ 27 (product names of "'grahams' and/or 'graham(s) crackers' is misleading because graham flour (whole grain wheat flour ) is present in an amount less than white flour (unbleached enriched flour)." ¶ 27; ¶¶55-56 ("graham crackers being mildly sweetened with honey or molasses, as opposed to refined, white sugar…The Products' claims to not contain "high fructose corn syrup" (HFCS) makes consumers expect that the non-traditional sweeteners – honey and molasses – are at least the predominant sweeteners in the Product.").

These statements of the Products' qualities clearly are those which the UCC intended to be considered express warranties. *Bourbia v. SC Johnson & Son, Inc.*, 375 F.Supp.3d 454, 464 (S.D.N.Y. 2019) ("product descriptions such as those on Off! Clean Feel's label are considered express warranties under New York's Uniform Commercial Code, and Plaintiff alleged that the label statements were part of the basis of the bargain.").

B.    <u>Defendant's Statements were Relied upon by Plaintiffs</u>

Plaintiffs satisfy the "basis of the bargain" requirement for an express warranty claim. FAC ¶ 158 ("The representations and omissions were relied on by Named Plaintiffs and Jane Doe Plaintiffs and class members, who paid more than they would have, causing damages.").

Defendant's "affirmations about the product" were made "during the bargain," *viz*, appearing on the Products' front and side labels, creating a presumption of reliance. *In re Rezulin*

*Products Liability Litigation*, 133 F.Supp.2d 272, 291 (S.D.N.Y. 2001) (Reliance presumed when a seller makes affirmations about the product "during the bargain."); see FAC ¶ 7 ("The common relevant front label representations include (1) a tan, khaki-colored cracker and (2) 8g of whole grain per 31g serving"); ¶ 9 ("The side panel of the Nabisco Grahams Products contains the below statements… 8g of Whole Grain Per 31g Serving, No High Fructose Corn Syrup, a tradition of wholesome nutrition")

### C. The Express Warranties were Breached because the Products Composition did not Comport to its Specifications

Though the label representations give the impression the products contained more whole grain graham flour and honey (Honeymaid Products) than enriched flour and regular sugar the ingredient lists indicate these warranties were not complied with.  FAC ¶ 27 ("graham flour (whole grain wheat flour ) is present in an amount less than white flour (unbleached enriched flour)."), ¶ 62 ("the amount of honey is less than the amount of sugar as indicated on the ingredient list), ¶ 66 ("The artificial flavor is not indicated on the front label which is misleading and contrary to law.").

### D. Plaintiffs Allege Injury Based on Defendant's Breach

Due to the "representations and omissions," plaintiffs "paid more than they would have." FAC ¶ 158.  Plaintiffs have clearly suffered and alleged an injury under the relevant standards. *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029, 2015 WL 2168374, at *12 (S.D.N.Y. May 7, 2015) ("Plaintiffs have ... adequately alleged injury [under NYGBL §§ 349 and 350] by claiming that they paid a price premium that they would not have paid if the products were not labeled `natural' or `all natural.'"); *Gonzalez v. Costco Wholesale Corp.*, No. 16-cv-2590, 2018 WL 4783962, at *7 (E.D.N.Y. Sept. 29, 2018) (adequately pleaded economic injury because "had Plaintiff known the "true facts," namely that the Products allegedly contained unnatural, harmful, and toxic chemical ingredients, she contends that she "would not have purchased, or would have

18

purchased less of, or would have paid less for, the Products.").

E.   Defendant's Claim of Lack of Pre-Suit Notice is Conclusory and Incorrect

Defendant contends, without even a citation to statutory authority, that the warranty claims should be dismissed for lack of pre-suit notice.  Def. Motion at 24 citing FAC ¶ 174 ("Named Plaintiffs and Jane Doe Plaintiffs sent or intend to send notice to defendant"); N.Y. U.C.C. § 2-607(3)(a) ("Where a tender has been accepted the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy").  However, defendant notably does not dispute that plaintiffs "*sent*" notice to defendant and pins its argument on the *second* part of the referenced paragraph.

Courts in this State have liberally applied the notice requirements for express warranty claims and find this to be a question of fact not susceptible to resolution on a motion to dismiss. *Hubbard v. Gen. Motors Corp.*, No. 95-cv-4362, 1996 WL 274018, at *4-5 (S.D.N.Y. May 22, 1996). ("[T]he sufficiency and timeliness of the notice is generally a question for the jury.").

i.   Defendant's Attorneys' Statements are Insufficient to Overcome Established Pleading Standards

On a motion to dismiss, a court is restricted to the factual allegations in the complaint "which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 151 (2d Cir. 1993).

Defendant has not contested the notice allegations of the FAC by "filing proof in admissible form, either by affidavit or through documentary evidence," contrary to the requirements imposed by the Federal Rules of Civil Procedure.  *Iron Workers Dist. Council of W. N.Y. v. D.C. Scott, Inc.*, 474 F.Supp.2d 467, 471 (W.D.N.Y. 2007).

19

In place of a properly sworn affidavit from defendant's mail clerk, describing the procedures and protocols related to directing mail and stating that their records indicate the absence of notice from plaintiff at or before the time the action was commenced, defendant proffers its attorney's conclusions. However, because defendant's counsel does not have personal knowledge of whether defendant received pre-suit notice from plaintiff, the warranty claims must prevail at the pleading stage.

### ii.   Pre-Suit Notice Not Required

According to defendant, the warranty claims must be dismissed because plaintiff did not provide notice of the breach. See *Colella v. Atkins Nutritionals, Inc.*, 348 F.Supp.3d 120, 143 (E.D.N.Y. 2018) (dismissing breach of express warranty claim for lack of pre-suit notice); *Paulino v. Conopco, Inc.*, No. 14-cv-5145, 2015 WL 4895234, at *1 (E.D.N.Y. Aug. 17, 2015) ("a buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."); *Quinn v. Walgreen Co.*, 958 F.Supp.2d 533, 544 (S.D.N.Y. 2013) (same); *Singleton v. Fifth Generation, Inc.*, No. 15-cv-474, 2016 WL 406295, at *12 (N.D.N.Y. Jan. 12, 2016) (dismissing express warranty claim because plaintiff "failed to allege that he provided timely notice to Defendant of the alleged breach").

Defendant's argument fails to consider the line of New York Cases that create an exception to the notice requirement for retail customers. *Neri v. R.J. Reynolds Tobacco Co.*, No. 98-cv-371, 2000 WL 33911224, at *19 (N.D.N.Y. Sept.28, 2000).

### iii.   Notice Requirement is Satisfied because Defendant had Actual Knowledge Through Other Versions of its Products

The notice requirement of N.Y. U.C.C. § 2-607(3) plainly states the buyer must "notify the seller of breach." This statement therefore assumes that a seller, or defendant, is unaware of the product's failure to conform to its representations. However, the U.C.C. definition of "notice"

encompasses a seller's "actual knowledge" of the defect being sufficient to meet the requirement of N.Y. U.C.C. § 2-607(3).  See N.Y. U.C.C. § 1-202(a) ("A person has 'notice' of a fact when (1) he has actual knowledge of it; or... (3) ... he has reason to know that it exists.").

Defendant surely was aware of the lack of whole grain graham flour in the Products prior to this action, based upon the version of the Products in which graham flour is the predominant grain component.  FAC, ¶ 40.

> iv.   Notice Requirement is Satisfied through the Filing of the Amended Complaint

This notice requirement does not specify a manner of notice or any specific steps a plaintiff needs to take other than informing a defendant that its products failed to conform with their descriptions. N.Y. U.C.C. § 2-607(3)(a) (requiring a buyer to "notify" the seller of the breach but not requiring compliance with any particular notice method).

In fact, courts in this State have found that notice under N.Y. U.C.C. § 2-607(3) is sufficient where a plaintiff files a complaint against the breaching defendant and where a complaint is amended.  *Dolori Fabrics, Inc. v. Limited, Inc.*, 662 F.Supp.1347, 1359 (S.D.N.Y. 1987) (citing N.Y. U.C.C. § 2-607(3)(b) and finding a party "received the required notice of the pending action when it was named codefendant in this suit"); *Panda Capital Corp. v. Kopo Int'l, Inc.*, 242 A.D.2d 690, 692, 662 N.Y.S.2d 584 (App. Div. 2d Dep't 1997) (applying N.Y. U.C.C. § 2-607(3) and observing "that the complaint and subsequent amended complaint in this action themselves constituted such notice").

## F.   Privity is Not Required

Interestingly, defendant fails to challenge plaintiff's express warranty claims based on lack of privity.  Def. MOL at 26 ("Plaintiffs' implied warranty claim under New York law independently fails because Plaintiffs allegedly purchased the products from retailers and are

accordingly not in privity with MDLZ, as New York law requires.").

Defendant cannot challenge the express warranty claims based on a lack of privity because "New York law does not require privity when a breach of express warranty is "based on misrepresentations contained in `public advertising or sales literature.'" *Famular v. Whirlpool Corp.*, No. 16-cv-944, 2017 WL 2470844, at *4 (S.D.N.Y. June 6, 2017) quoting *Weisblum v. Prophase Labs, Inc.*, 88 F.Supp.3d 283, 287, 295 (S.D.N.Y. 2015) (privity is not required where a plaintiff claims defendant misrepresented aspects of its products in "public advertising or sales literature."); *Randy Knitwear, Inc. v. American Cyanamid Co.*, 11 N.Y. 2d 5 at 11, 13 (1962) (privity is not compatible with "present-day commercial practices").

### G.   Plaintiffs are Third-Party Beneficiaries

Privity is not required for plaintiffs' express warranty claims because the UCC expanded the affected parties who could recover if they are those who could "reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty." N.Y. U.C.C. § 2-318 ("Third Party Beneficiaries of Warranties Express or Implied."); see FAC ("The representations and omissions were relied on by plaintiff and class members, who paid more than they would have, causing damages." Here, plaintiff and consumers are the intended third-party beneficiaries of the express warranties, as they, not the retail stores, are the end-users.

## VIII. Plaintiffs Plausibly Allege Defendant's Fraudulent Intent

Defendant argues that Plaintiffs fails to plausibly allege common law fraud because she fails to allege specific facts that give rise to a "strong inference of fraudulent intent." Plaintiff satisfied the requirements of Fed. R. Civ. P. 8(a), and the heightened requirements of Fed. R. Civ. P. 9(b) by adequately pleading the "who, what, when, where, and how of the alleged fraud, noted in the below table. *U.S. ex rel. Polansky v. Pfizer, Inc.*, No. 04-cv-0704, 2009 WL 1456582, at *4

22

(E.D.N.Y. May 22, 2009).

| Pleading | FAC Allegations |
|---|---|
| Who: | "Mondelēz Global LLC ("defendant") manufactures, distributes, markets, labels and sells products identified as "Grahams Crackers" or "Grahams" under the under the Honey Maid brand ("Products")." |
| What: | "Either read as "grahams" or "graham crackers," the expectation is that such a product will contain more graham flour than white flour." |
| When: | "during the statutes of limitations" |
| Where: | "The common relevant front label representations include"
"The Nabisco Products front labels' separately contain"
"The side panel of the Nabisco Grahams Products contains"
"The Honey Maid Products front labels' separately contain" |
| How: | "The labeling is misleading in that it uses a product name that includes one of the product's ingredients (graham flour) but fails to mention one other notable ingredient (white flour)." |

Defendant's intent is evinced by its opportunity to commit fraud and their "conscious misbehavior or recklessness," in furthering the mistaken beliefs of its customers that the Products' composition would conform with their name. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *Plumbers & Steamfitters Local 137 Pension Fund v. American Express Co.*, No. 15-cv-5999, 2017 WL 4403314, at *4 (S.D.N.Y. Sept. 30, 2017) ("Where the alleged conduct is an omission, "conscious recklessness" means defendants must have "acted with at least a reckless disregard of a known or obvious duty to disclose.").

The FAC has met the "specificity requirement for scienter" imposed by Fed. R. Civ. P. 9(b) since plaintiffs have not only "averred generally" as to defendant's knowledge. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

Plaintiff's allegations give rise to a strong inference that Defendant acted with either actual

knowledge of its representations' falsity or with reckless disregard for their truth, which satisfies

the scienter requirement for fraud claims. See *Hughes v. Ester C Co.*, 930 F.Supp.2d 439, 473

(E.D.N.Y. 2013) ("Plaintiffs bolster this claim of alleged falsity awareness by pointing to an

alleged lack of supporting scientific evidence for defendants' claims"); *O'Brien v. Nat'l Prop.*

*Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) ("Rule 9(b) permits scienter to be

demonstrated by inference").

### IX.     Plaintiff's Unjust Enrichment Claims are Adequately Pleaded

Defendant states an unjust enrichment claim is not available where it simply duplicates or

replaces, a conventional contract or tort claim. *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790

(2012).  Though correct that "[A] plaintiff may not plead the same claim more than once, which

would constitute a duplicative claim," the Federal Rules permit pleading claims which "provide

alternative bases for relief." Fed. R. Civ. P. 8(d); *In re SKAT Tax Refund Scheme Litig.*, 356

F.Supp.3d 300, 325 (S.D.N.Y. 2019).  The FAC's unjust enrichment is not duplicative of the

contract or tort claims because plaintiffs' consumer protection law claims may not succeed, yet the

unjust enrichment claim would provide relief.

### X.     Plaintiffs Adequately Plead Injury

New York state and federal courts as well as the Second Circuit often look for a "price

premium" formulation in the pleadings to find cognizable injury, which is what the FAC provides.

*Yee Ting Lau v. Pret A Manger (Usa) Limited*, No. 17-cv-5775 (S.D.N.Y. Sept. 28, 2018).

There is no basis to require that plaintiffs identify a comparison product to plead a price

premium economic injury.  *Daniel v. Mondelez Int'l, Inc.*, 287 F.Supp.3d 177, 198 n.19 (E.D.N.Y.

2018) ("to the extent *Izquierdo* holds that Plaintiff must identify a precisely comparable product

in order to allege a GBL section 349 or 350 claim under a price premium theory, *Izquierdo*

contradicts the weight of the law in this Circuit. Courts routinely allow complaints that lack allegations of both cheaper and exactly comparable products to survive motions to dismiss.") citing *Izquierdo v. Mondelez Int'l, Inc.*, No. 16- cv-04697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016);

## XI. The Court has Specific Personal Jurisdiction over Non-New York Class Members

Defendant's argument with respect to the nationwide class are conclusory, overbroad and premature. Relying primarily on *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773 (2017) ("BMS"), Defendant argues there is no specific personal jurisdiction as to the claims of putative nationwide class members residing outside of New York. That argument fails because specific personal jurisdiction is not based on the claims of absent class members, which was unaffected by *Bristol-Myers* and the BMS decision did not change that rule.

### A.   Absent Class Members' Claims Are Not Relevant To Specific Personal Jurisdiction

Defendant's argument that the Court lacks specific personal jurisdiction over claims of absent, out-of-state class members fails for several reasons.

First, it is well-established that "[w]hen [an] action is brought as a purported class action, personal jurisdiction over each defendant is assessed with respect to the named plaintiffs' causes of action." *Famular v. Whirlpool Corp.*, No. 16-cv-944, 2017 WL 2470844, at *4 (S.D.N.Y. June 6, 2017)

What matters is that "the named plaintiff's claim [that must] arise out of or result from the defendant's forum-related activities, not the claims of the unnamed members of the proposed class, who are not party to the litigation absent class certification." *Aliano v. Quaker Oats Co.*, No. 16-cv-3087, 2017 WL 56638, at *4 (N.D. Ill. Jan. 4, 2017).

Decisions after *BMS* confirmed that personal jurisdiction in a putative class action is evaluated by the named plaintiff's claims. See *Jackson v. Bank of Am., N.A.*, No. 16-cv-787, 2018

WL 2381888, at *6-7 (W.D.N.Y. May 25, 2018) (out of state plaintiffs "cannot be lead plaintiffs for a potential class action in New York, though the lack of specific jurisdiction potentially would not be an impediment to unnamed members of a class."); *In re: Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 09-md-02047, 2017 WL 5971622, at *19 (E.D. La. Nov. 30, 2017).

Second, the fact that absent class members are not "haling" the defendant into any forum makes all the difference for purposes of analyzing personal jurisdiction.  See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ("This 'purposeful availment' requirement ensures that a defendant will not be hailed into a jurisdiction solely as a result of 'random' or 'fortuitous' or 'attenuated' contacts.").

Although absent class members may ultimately recover from a defendant, they never assert claims against a defendant in a sense that matters for personal jurisdiction. It is the named plaintiffs who force the defendant to answer the suit, respond to discovery, and defend against class certification. In contrast, "an absent class- action plaintiff is not required to do anything." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985).  Therefore, the rule that a court can exercise personal jurisdiction over a class so long as it can exercise personal jurisdiction over the claims of the named plaintiffs makes sense.

Third, Defendant simply ignores the fact that courts throughout the country – including in this Circuit – have long certified multi-state classes in a variety of circumstances where the defendant was not incorporated or headquartered in the forum state.[3] Defendant does not argue that any of those cases are wrongly decided. If that is the case, then Defendant's position cannot be correct. See *In re: Chinese Drywall*, 2017 WL 5971622, at *18 ("If due process acted as a

---

[3] *Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374 (S.D.N.Y. 2016) (certifying New York, California, and Florida consumer classes against a New Jersey-based corporate defendant); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015) (certifying New York and California consumer classes against an Ohio-based corporate defendant).

constraint on nationwide class actions, then settlement classes would also be uncertifiable and the Class Action Fairness Act would have a meaningless exercise.").

    B.    <u>*BMS* Does Not Support Dismissing the Claims of the Non-New York Class Members</u>

BMS does not support dismissal of the non-New York absent class members' claims because it did not address a class action and did not change the law on class actions.[4] See *Campbell v. Freshbev LLC*, 322 F.Supp.3d 330, 337 (E.D.N.Y. 2018) (explaining and distinguishing BMS); *Gonzalez* , 2018 WL 4783962, at *8 (same).

In fact, given the unsettled nature of the law following BMS, courts in this Circuit considering whether BMS extends to class actions have denied motions to dismiss similar cases and deferred resolution of the issue to the class certification stage. *Campbell*, 322 F.Supp.3d at 337; *Gonzalez*, 2018 WL 4783962, at *8. And at least one court in this Circuit has declined to extend BMS to a putative class action. *Jensen v. Cablevision Sys. Corp.*, No. 17-cv-00100, 2017 WL 4325829, at *9 (E.D.N.Y. Sept. 27, 2017).

Defendant fails to even address the distinction between class actions and mass tort actions. However, the distinction is critical because "[i]n a mass tort action, each plaintiff [is] a real party in interest to the complaint" while "[i]n an action brought as a class action, personal jurisdiction is based on a defendant's contacts with the forum state and actions giving rise to the named plaintiffs' causes of action." *Gonzalez*, 2018 WL 4783962, at *7.

The post-BMS cases cited by Defendant are non-binding and unpersuasive. Def. Mem. 24-25 citing *Spratley v. FCA US LLC*, No. 17-cv-0062, 2017 WL 4023348, at *7 (N.D.N.Y. Sept. 12,

---

[4] *BMS* "concerns the due process limits on the exercise of specific jurisdiction by a State," and the Supreme Court explicitly left open whether the same logic would extend to federal courts under the Fifth Amendment. *See BMS*, 137 S. Ct. at 1783-84.

2017) (where the "first-filed" rule was not applicable for dismissal due to similar case within same District, applying *Bristol-Myers* to effectively dispose of the majority of the claims) and *Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F.Supp.3d 840, 864 (N.D. Ill. 2018).

While authority can be located supporting the application of *Bristol-Myers* in a class action, a closer look shows the consideration of personal jurisdiction was incidental to those Courts' dispositions.

None of the cases proffered by defendant considered the meaningful distinction between mass actions and class actions. Plaintiff respectfully submits the cases it has presented are far more persuasive.  Further, the application of BMS is better suited at the certification stage.

### XII.   Plaintiff has Standing to Seek Injunctive Relief

Plaintiffs and reasonable consumers seek to be relieved from Defendant's continuing misleading and deceptive practices in the future, which are no more truthful today than when plaintiffs first discovered the alleged deception.

Defendant argues that Plaintiffs lack standing to pursue injunctive relief because there is no indication that they intends to purchase any of the Products again, and is therefore unlikely to suffer any future injury.

However, this argument ignores that "an injunction in connection with a class action is designed to afford protection of future consumers from the same fraud. It does this by permitting the plaintiff to sue on their behalf." *Belfiore v. Procter & Gamble Co.*, F.Supp.3d 440, 445 (E.D.N.Y. 2014).

To hold otherwise "denigrate[s] the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated." Id. See *Delgado v. Ocwen Loan Servicing Company, LLC*, No. 13-cv-4427, 2014 U.S. Dist. LEXIS 135758, 2014 WL 4773991, at

28

*42 (E.D.N.Y. Sept. 23, 2014) (concluding that plaintiffs who became aware of deceptive practice lack standing to seek injunctive relief would "eviscerate the intent of the California legislature in creating consumer protection statutes."); *Ackerman v. Coca-Cola Co.*, No. 09-cv-395, 2013 WL 7044866, at *15 n. 23 (E.D.N.Y. July 18, 2013) (foreclosing injunctive relief based on awareness of deceptive practice, evinced by the legal action in which a plaintiff is seeking this relief, would "'effectively bar any consumer who avoids the offending product from seeking injunctive relief.'") (quoting *Koehler v. Litehouse, Inc.*, 2012 U.S. Dist. LEXIS 176971, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012)).

**Conclusion**

Though "a party may amend its pleading only with the opposing party's written consent or the court's leave" after the expiration of time for amendment as a matter of course, the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[T]he 'permissive standard' of Rule 15 'is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015). Plaintiffs have not had an opportunity to amend their pleading in response to a Court order evaluating the sufficiency of his allegations. As the Second Circuit observed, "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley*, 797 F.3d at 190.

For the foregoing reasons, the Court should deny Defendant's Motion in its entirety or in the alternative, grant leave to amend or dismiss without prejudice.

Dated:   September 27, 2019

Respectfully submitted,

Sheehan & Associates, P.C.

29

<u>/s/Spencer Sheehan</u>
Spencer Sheehan (SS-8533)
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

1:19-cv-00302-ENV-SJB
United States District Court
Eastern District of New York

Keith Kennedy, individually and on behalf of all others similarly situated,

Plaintiff,

-against-

Mondelēz Global LLC

Defendant

Plaintiffs' Memorandum of Law in Opposition to
Defendant's Motion to Dismiss the First Amended Complaint

Sheehan & Associates, P.C.
505 Northern Blvd., #311
Great Neck, NY 11021
Tel: (516) 303-0552
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

September 27, 2019                                          /s/ Spencer Sheehan
                                                            Spencer Sheehan