UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KEITH KENNEDY, ANNE MARIE BARLETTA,
CHRIS DERCHIN, KELLIE J. NYANJOM, JENNIFER
STEPHENS, ERIC BOECKER, ROBERT T. SOUSA,
NANCY BIERLY, JARED D'ARGENIO, LISA
WILLIAMS, DONALD C. HUNT, CRAIG
MOSKOWITZ, TIFFNI ALTES, RACHEL PARKS,
PAULA WILEY, FRANK FUDA, and LEROY JACOBS,
*individually and on behalf of all others similarly
situated*,

**REPORT &
RECOMMENDATION**
19-CV-302-ENV-SJB

Plaintiffs,

-against-

MONDELĒZ GLOBAL LLC,

Defendant.
-----------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

This is a putative class action brought under New York's consumer protection law

alleging that the use of the terms "grahams" and "graham crackers," along with other

statements and images, in Nabisco and Honey Maid's graham cracker products are

misleading.[1]  In particular, Plaintiffs[2] allege the terms "graham" and "graham cracker"

---

[1] While the Amended Complaint contains citations to nearly every state's
consumer protection statute, (Am. Compl. dated July 3, 2019, Dkt. No. 14 ¶ 150),
Plaintiffs' counsel narrowed the claims to New York and California law, (Tr. of Status
Conference dated July 26, 2019, Dkt. No. 18 at 8:16–8:20), and Plaintiffs have since
abandoned all California claims by failing to address Mondelez's arguments about
California law.  (*See* Pls.' Mem. in Opp. to Def.'s Mot. to Dismiss dated Sept. 27, 2019
("Pls.' Resp."), Dkt. No. 21 at 2).  "[C]ourts in this circuit have held that a plaintiff's
failure to respond to contentions raised in a motion to dismiss those claims constitute an
abandonment of those claims." *McLeod v. Verizon N.Y., Inc.*, 995 F. Supp. 2d 134, 143
(E.D.N.Y. 2014) (quotations and brackets omitted).  Therefore, the Court recommends
that any claim under the law of a state other than New York be dismissed.

[2] The Court refers to all named plaintiffs collectively as "Plaintiffs" and any
unnamed plaintiffs as "Jane Doe Plaintiffs."

imply that this classic s'mores ingredient[3] contains predominantly graham flour—as opposed to white flour—and that the representations about the amount of honey in the products imply that there is more honey than sugar, when in fact, neither is true. Defendant Mondelēz Global LLC ("Mondelez") has moved to dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6).  For the reasons below, it is respectfully recommended that the motion be granted.

FACTUAL AND PROCEDURAL BACKGROUND

I.    The Parties and Commencement of Litigation

Keith Kennedy commenced this action on January 15, 2019.  (Compl. dated Jan. 15, 2019, Dkt. No. 1).  He is a New York citizen who, along with the other Plaintiffs that were added when the Amended Complaint was filed, purchased Mondelez's graham cracker products.  (Am. Compl. ¶¶ 115, 138).[4]  Plaintiffs are citizens of New York (Kennedy and Chris Derchin), Massachusetts (Anne Marie Barletta), Kansas (Kellie J. Nyanjom), Idaho (Jennifer Stephens), Ohio (Eric Boecker), California (Robert T. Sousa and Tiffni Altes), Florida (Nancy Bierly and Jared D'Argenio), Iowa (Lisa Williams), Washington (Donald C. Hunt), Connecticut (Craig Moskowitz), Virginia (Rachel Parks), New Mexico (Paula Wiley), and Illinois (Frank Fuda and Leroy Jacobs).  (*Id.* ¶¶ 115–

---

[3] For instructions on how to make s'mores, see *The Sandlot* (20th Century Fox 1993) ("Okay, these are s'mores stuff.  Now pay attention.  First, you take the graham.  You stick the chocolate on the graham.  Then, you roast the mallow.  When the mallow's flaming, you stick it on the chocolate.  Then, you cover it with the other end.").

[4] The allegations in the Amended Complaint are accepted as true for the purposes of considering a Rule 12(b)(6) motion to dismiss.  *See Friedman v. Bloomberg L.P.*, 884 F.3d 83, 93 (2d Cir. 2017).

34).[5] In their states of residence, they purchased one or more Mondelez products for personal use based on representations on the packaging. (*Id.* ¶ 138). Parks, from Virginia, purchased products outside her state of residence, in North Carolina, and is the only Plaintiff to have done so. (*Id.* ¶¶ 114, 129–30).[6] Each Plaintiff would consider purchasing the products again if there were assurances that Mondelez's products' representations were no longer misleading. (*Id.* ¶ 140).

Jane Doe Plaintiffs are citizens of every other state and were deceived in the same manner. (Am. Compl. ¶ 135). Plaintiffs bring this case on behalf of a putative class of consumers in all 50 states with sub-classes for individual states. (*Id.* ¶¶ 141–42). They seek class-wide injunctive relief because the complained-of practices continue. (*Id.* ¶ 149).

Mondelez is a Delaware limited liability company, with its principal place of business in Illinois, that manufactures, distributes, markets, labels, and sells Honey Maid and Nabisco brand grahams or graham crackers nationwide. (*Id.* ¶¶ 2–4, 137). Upon information and belief, no member of Mondelez is a citizen of New York. (*Id.*). The assertion of personal jurisdiction is based on Mondelez's conducting and

---

[5] Anne Marie Barletta from Norfolk County, Massachusetts, (Am. Compl. ¶¶ 116, 119), and Kellie J. Nyanjom from Sedgewick County, Kansas, (*id.* ¶¶ 118, 131), are each named twice as a Plaintiffs in the Amended Complaint; the Court assumes this was an error and that there are not two Plaintiffs with the same name.

[6] The Amended Complaint states, "If indicated, plaintiffs may have purchased the products or services in states other than where they currently reside due to reasons including (i) residence in proximity to or near state line such that it is customary for consumers to engage in multi-state transactions, (ii) change of residence within the statutory time period for the causes of action such that they purchased the products or services in more than one state." (Am. Compl. ¶ 114). Park is the only Plaintiff for whom this is specifically alleged. (*Id.* ¶¶ 130–31).

transacting business, contracting to supply, and supplying goods in New York. (Am. Compl. ¶ 109). Venue is alleged to be proper because Kennedy and putative class members reside in this District and Mondelez does business in this District, and a substantial part of the events and omissions giving rise to the claims occurred in this District. (*Id.* ¶¶ 110–11).

The original Complaint included class allegations and alleged violations of the New York General Business Law Sections 349 and 350 (New York's consumer protection law), negligent misrepresentation, breach of express warranty and implied warranty of merchantability, fraud, and unjust enrichment for Mondelez's misleading and deceptive use of the terms "grahams" and "honey" in its labeling of Honey Maid products. (*See generally* Compl.).

II.    The Amended Complaint

Plaintiffs filed an Amended Complaint on July 3, 2019. (*See* Am. Compl.). The Amended Complaint challenges the labeling of two of Mondelez products—Nabisco Grahams and Honey Maid Grahams. (*Id.* ¶¶ 1–3). Graham crackers are distinct from cookies and marketed differently by Mondelez—Honey Maid grahams are categorized as "crackers." (*Id.* ¶¶ 16–18).

The label on a box of Nabisco Grahams contains the words "Nabisco Grahams," "Original," and "made with 8g of whole grain per 31g serving," and pictures of a tan, khaki-colored, darkened-color, or "noticeably dark-tan hue" cracker and a swaying, unrefined stalk of wheat. (*Id.* ¶¶ 7–8, 59, 78). The side panel of the Nabisco Grahams box includes the following statements: "8g of Whole Grain Per 31g Serving," "No High Fructose Corn Syrup," "More than a century of great graham know-how," "A sensible

snack with a satisfying hint of sweetness," and "NABISCO Grahams - a tradition of wholesome nutrition."  (Am. Compl. ¶ 9).





The Honey Maid label includes a similar picture of a tan, khaki-colored cracker, as well as pictures of a bee and a honey dipper, with the words "Honey Maid," "Made with Real Honey, "No High Fructose Corn Syrup," and "8g of Whole Grain per 31g serving." (*Id.* ¶¶ 7, 10).



As detailed below, Plaintiffs take issue with the representations about "grahams" and "graham crackers," "honey," and "whole grain" on the Nabisco and Honey Maid labels. (Am. Compl. ¶¶ 1–3).[7] These representations are alleged as misleading, deceptive, fraudulent, and unfair in violation of the New York General Business Law Sections 349 and 350 and the California Consumers Legal Remedies Act, Civil Code Sections 1750–85. (*Id.* ¶¶ 150–58). Plaintiffs also make claims for negligent misrepresentation, stating Mondelez misrepresented the substance, nutritional value, and other characteristics of their products. (*Id.* ¶¶ 159–65). Plaintiffs also allege a breach of express warranty and implied warranty of merchantability in violation of the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, because Mondelez allegedly had a special duty to not mislead and misrepresent the flour content of the grahams it sells. (*Id.* ¶¶ 166–75). Claims of fraud and unjust enrichment are also alleged on similar bases. (*Id.* ¶¶ 176–86). As a result of this false and misleading labeling, the grahams are sold at a premium, no less than $3.99 per 14.4 ounces or 409 grams, excluding tax, when compared to similar products represented in a non-misleading way. (Am. Compl. ¶ 106).

The particular representations at issue are as follows:

A. "Grahams," "Graham Crackers," and Whole Grains Allegations

Several aspects of the Nabisco and Honey Maid graham labels represent that the products contain some amount of whole grains in a way that is misleading.

---

[7] The product labels also misleadingly state the grahams are "wholesome." (Am. Compl. ¶¶ 104–05).

The dictionary definition of "graham crackers" is "a slightly sweet cracker made of whole wheat flour" or "a semisweet cracker, usually rectangular in shape, made chiefly of whole-wheat flour." (*Id.* ¶ 26). Graham flour is a whole grain wheat flour. (*Id.* ¶ 27). As such, Plaintiffs contend that reasonable consumers expect that Mondelez's graham cracker products to include more graham flour than white flour, and consumers expect the products to contain only graham flour. (*Id.* ¶¶ 24–25).

Mondelez's representation that the Nabisco and Honey Maid products are "grahams" and/or "graham crackers" is misleading because neither product contains more graham flour, a whole grain wheat flour, than white flour, an unbleached enriched flour, (*id.* ¶ 27); and furthermore, Mondelez has chosen to label the product with only one ingredient while omitting reference to others, (Am. Compl. ¶ 30). The use of the identity "grahams"—the common or usual name for graham flour—represents that a single ingredient—graham flour—constitutes 100 percent of the food. (*Id.* ¶¶ 94–96). This is misleading because the product is not solely graham flour and actually contains more of another, lower valued ingredient. (*Id.* ¶ 96). Mondelez did not use the same brand name before 1989 and if it did, the products then contained more graham flour than white at the time. (*Id.* ¶ 97).

In addition, while consumers associate darker hues in grain products with whole grains, Mondelez's products contain more white flour. (*Id.* ¶¶ 79–84). Honey is used as a flavoring agent to give the impression that more graham flour is present than actually is, despite there being a smaller amount of honey than sugar. (Am. Compl. ¶ 82).

That the labelling states the graham crackers are "made with 8g of whole grain per 31g serving" is also misleading; it does not disclose that the difference between the 31 grams and 8 grams means there are 23 grams of refined grain per serving. (*Id.*

¶¶ 85–86).  Consumers also associate whole grains with fiber, and the whole grain representation implies that the products are high in fiber, but Nabisco and Honey Maid grahams only contain four percent or less fiber.  (*Id.* ¶¶ 91–93).

In Plaintiffs' view, an accurate label for Mondelez's products would state the product is "crackers made with graham flour," "graham-flavored crackers," or "crackers with X% graham flour."  (*Id.* ¶ 31).

Plaintiffs contend that the misleading nature of the labels is evident because graham crackers with predominately graham flour are available for sale in the same places as Nabisco and Honey Maid grahams.  (*Id.* ¶ 38).  In fact, "institutional versions" of Nabisco and Honey Maid grahams sold by Mondelez's sister company, Mondelēz International Foodservice, contain more graham flour than white flour.  (Am. Compl. ¶¶ 39–42).  These versions are marketed toward schools, youth groups, and other entities with certain educational or recreational standards.  (*Id.* ¶ 42).  To receive federal and/or state assistance in purchasing food in educational and youth settings, the USDA Food and Nutrition Services has grain crediting standards.  (*Id.* ¶ 43).  Were retail versions of the products sold by Mondelez only offered through this channel, they would not meet crediting and nutritional standards and institutional customers would not purchase them.  (*Id.* ¶ 44).

B.  Honey

"Honey is a 'thick, sweet, syrupy substance that bees make as food from the nectar of plants or secretions of living parts of plants and store in honeycombs.'"  (Am. Compl. ¶ 58 (quoting *Webster's New World College Dictionary* (Wiley Publishing, Inc. 2010)).  Plaintiffs take issue with Mondelez's representations about honey and the other sweetening agents in its products.  Honey Maid grahams boxes contain the statements

"made with real honey" and "*Honey* Maid" and have the image of the bee and honey dipper on the packaging. (*Id.* ¶ 59 (emphasis added); *see supra* p. 6).

Graham crackers are commonly understood to be different than a cookie or traditional crackers that may contain sugar. (Am. Compl. ¶ 61). As such, consumers expect graham crackers, including Honey Maid graham crackers, to be mildly sweetened with honey or molasses. (*Id.* ¶¶ 55, 60). Consumers expect that honey and molasses are to be the predominant, but not necessarily the exclusive, sweeteners as opposed to refined, white sugar. (*Id.*). The other reason that consumers expect honey and molasses to be the predominant sweeteners is because Mondelez represents that its graham crackers do not contain high fructose corn syrup and consumers associate high fructose corn syrup with sugar. (*Id.* ¶¶ 56–57). Honey Maid grahams, however, contain amounts of honey and molasses that are less than the amount of sugar, as demonstrated by the ingredient list on the product packaging. (*Id.* ¶¶ 27, 62; *see supra* p. 6). In addition, honey is enhanced by artificial flavoring and is added as a part of a honey-invert sugar blend, but neither fact is disclosed on the front labeling. (Am. Compl. ¶¶ 63–75). Instead of indicating that honey is added as a blend in the ingredients list, Mondelez lists honey as its own ingredient (and separately the other components of the blend). (*Id.* ¶¶ 71–75; *see supra* p. 6).

III.    The Motion to Dismiss

On July 24, 2019, Mondelez moved for a partial stay of discovery and proposed a schedule for the completion of some discovery; Plaintiffs did not object, (Letter Mot. to Stay dated July 24, 2019, Dkt. No. 17 at 1), and the Court granted the motion, (Minute Entry and Order dated July 26, 2019).

On October 18, 2019, all motion papers were filed on the public docket, (Mot. to Dismiss dated Oct. 18, 2019, Dkt. No. 21). The Honorable Eric N. Vitaliano referred the motion to dismiss the undersigned on October 22, 2019. (Order Referring Motion dated Oct. 22, 2019).

DISCUSSION

I.     Standing for Injunctive Relief

"[A] district court must generally resolve material factual disputes and establish that it has federal constitutional jurisdiction, including a determination that the plaintiff has Article III standing, before deciding a case on the merits." *All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006) (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101 (1998)). "For each form of relief sought, a plaintiff 'must demonstrate standing separately.'" *Kurtz v. Costco Wholesale Corp.*, -- F. App'x --, No. 17-CV-1856, 2020 WL 3480830, at *2 (2d Cir. June 26, 2020) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)) (citations omitted).

Plaintiffs here seek injunctive relief, namely an injunction directing Mondelez to correct its practices and remove and refrain from using certain representations on its products. (Am. Compl. at 30). They also seek class-wide injunctive relief. (*Id.* ¶ 149). To obtain such injunctive relief, a plaintiff must demonstrate standing; that is, there must be an indication of "a continuing violation or the imminence of a future violation." *Steel Co.*, 523 U.S. at 108. "Plaintiffs seeking injunctive relief must also prove that the identified injury in fact presents a real and immediate threat of repeated injury." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013). "The prospective-orientation of the analysis is critical: to maintain an action for injunctive relief, a

plaintiff 'cannot rely on past injury . . . but must show a likelihood that he . . . will be injured in the future.'" *Berni v. Barilla S.p.A.*, -- F.3d --, No. 19-1921-CV, 2020 WL 3815523, at *5 (2d Cir. July 8, 2020) (quoting *Deshawn E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)). "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citations omitted)). In the consumer protection context, "past purchasers of a consumer product who claim to be deceived by that product's packaging . . . have, at most, alleged a past harm." *Berni*, -- F.3d --, 2020 WL 3815523, at *5. They "are not likely," however, "to encounter future harm of the kind that makes injunctive relief appropriate." *Id.*

Plaintiffs' allegations here are insufficient to establish standing to obtain injunctive relief for themselves or a putative class. Plaintiffs have not alleged they are likely purchase the products at issue again. All Plaintiffs allege is that they "*would* consider purchasing the Products again *if* there were assurances that the Products' representations were no longer misleading." (Am. Compl. ¶ 140). They are not identified as regular purchasers of Mondelez's products, as opposed to one-time consumers, and they state they would only purchase Mondelez's products if the labels change or are deemed to be accurate. In other words, if the products remain as they are, they will not purchase them again unless the current labels are deemed non-deceptive. As such, there is no likelihood that they would be continued to be harmed by the current allegedly misleading labelling.

But as alleged, if the labels are deemed deceptive, Plaintiffs would not purchase the products (and therefore not have any standing to sue and not suffer any injury). If

the labels are non-deceptive, there can be no injury suffered (and therefore there is no injunctive relief to be award). And even if they did purchase the products as is, "they [would] be doing so with exactly the level of information that they claim they were owed from the beginning," so they would not be harmed. *Berni*, 2020 WL 3815523, at *6. As a consequence there is not real, immediate, and imminent threat of continued injury, and these Plaintiffs cannot obtain injunctive relief. *See, e.g.*, *Lugones v. Pete & Gerry's Organic, LLC*, -- F. Supp. 3d --, No. 19-CV-2097, 2020 WL 871521, at *6 (S.D.N.Y. Feb. 21, 2020) ("Plaintiffs cannot show that they are likely to suffer any future injury because they have alleged that they do not intend to purchase Nellie's Free Range Eggs unless Defendant changes its practices to mirror its advertising."); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697, 2016 WL 6459832, at *5 (S.D.N.Y. Oct. 26, 2016) ("[The] conditional statement . . . mean[s] that Izquierdo will not purchase the Candy unless Mōndelez changes the Candy packaging. If the condition goes unfulfilled—that is, if Mōndelez does not change the Candy packaging—Izquierdo will not purchase the Candy again. Therefore, he will not be injured. . . . Plaintiffs here must plead a likelihood of future injury in order to show standing to sue for an injunction. Izquierdo has not done so here.").[8]

Since Plaintiffs have failed to demonstrate their own Article III standing here, no class based on their allegations could have standing for injunctive relief. *See, e.g.*, *Berni*, 2020 WL 3815523, at *7 (vacating approval of a class settlement for past purchasers of Barilla pasta where "injunctive relief [was] not proper for the group of past purchasers

---

[8] Further, the Second Circuit recently rejected any policy exception that would grant consumer protection plaintiffs standing for injunctive relief. *See Berni*, -- F.3d --, 2020 WL 3815523, at *6.

of Barilla pasta—because not every member of that group [stood] to benefit from the 'fill-line' and disclaimer language included in the settlement proposal").[9]

Thus, regardless of resolution of the merits of the consumer protection claims, the Court recommends the claims for injunctive relief be dismissed for lack of standing.

II. Personal Jurisdiction

The principle that "a district court must generally resolve material factual disputes and establish that it has federal constitutional jurisdiction . . . before deciding a case on the merits . . . applie[s] equally to personal jurisdiction, because '[p]ersonal jurisdiction, too, is an essential element of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication.'" *Mones v. Com. Bank of Kuwait, S.A.K.*, 204 F. App'x 988, 989 (2d Cir. 2006) (quoting *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 584 (1999)) (citing *All. For Envtl. Renewal, Inc.*, 436 F.3d at 85). There are two types of personal jurisdiction: general and specific. "When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising 'general jurisdiction' over the defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984); *accord Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.15 (1985). This occurs when, for example, the defendant is domiciled in the forum state. *See Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014)

---

[9] That putative plaintiffs may purchase products too is insufficient to confer standing on Plaintiffs. *See, e.g.*, *Disability Rights N.Y. v. New York State*, No. 17-CV-6965, 2019 WL 2497907, at *17 & n.12 (E.D.N.Y. June 14, 2019) ("While such injury may be redressable with respect to other putative plaintiffs, Thomas lacks standing as to that injury (to the extent it is an injunctive relief sought). . . . Absent class certification or other similar vehicle, Thomas cannot raise the claims of others.").

("'[G]eneral' or 'all purpose' jurisdiction . . . permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit (*e.g.,* domicile)."). "'Specific' or 'case-linked' jurisdiction depends on an affiliation between the forum and the underlying controversy (*i.e.,* an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)." *Id.* (quotations and alterations omitted).

Mondelez is domiciled in Illinois.[10] (Am. Compl. ¶ 137). "Three elements must be met in order for a court to exercise personal jurisdiction over a non-domiciliary defendant." *MWH Int'l, Inc. v. Inversora Murten S.A.*, No. 11-CV-2444, 2012 WL 3155063, at *3 (S.D.N.Y. Aug. 3, 2012). "First, the plaintiff's service of process upon the defendant must have been procedurally proper. . . . Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective. . . . Third, the exercise of personal jurisdiction must comport with constitutional due process principles." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d

---

[10] There are no facts alleged or arguments made by Plaintiffs to suggest Mondelez is domiciled anywhere else.

Cir. 2012).[11]  "A plaintiff must establish the court's jurisdiction with respect to *each* claim asserted."  *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).

"[T]o survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists."  *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010) (quotations omitted).  "However, prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction.  In their inquiry, courts will construe the pleadings and affidavits in the light most favorable to complainant, resolving all doubts in its favor."  *MWH Int'l, Inc.*, 2012 WL 3155063, at *3 (quotations and citations omitted) (alterations omitted); *accord Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 126 (2d Cir. 2008).

Mondelez argues the Court does not have personal jurisdiction over it for the claims asserted by Plaintiffs that did not purchase Honey Maid or Nabisco grahams in New York.  (Defs.' Mot. at 32–33).  In other words, the question is whether the Court

---

[11] "[I]n a diversity action, personal jurisdiction is determined by the law of the forum in which the federal court sits."  *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 417 (S.D.N.Y. 2010) (citing *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985)).  Unlike several other states, "[t]he New York long-arm statute does not extend in all respects to the constitutional limits established by *International Shoe Co. v. Washington*, and its progeny."  *Licci*, 673 F.3d at 60–61 (citation omitted); *see Banco Ambrosiano v. Artoc Bank & Tr. Ltd.*, 62 N.Y.2d 65, 71 (1984) ("[I]n setting forth certain categories of bases for long-arm jurisdiction, CPLR 302 does not go as far as is constitutionally permissible.  Thus, a situation can occur in which the necessary contacts to satisfy due process are present, but in personam jurisdiction will not be obtained in this State because the statute does not authorize it." (citations omitted)).  Therefore, when "plaintiffs premise their theory of personal jurisdiction upon the New York long-arm statute, [courts] first consider whether the requirements of the statute have been satisfied before proceeding to address whether the exercise of jurisdiction would comport with the Due Process Clause."  *Licci*, 673 F.3d at 61.

has specific personal jurisdiction—Plaintiffs do not contend that the Court has general jurisdiction over Mondelez.

Here, nearly all of the Plaintiffs allege they purchased Mondelez's products in states other than New York; only Plaintiffs Kennedy and Derchin purchased Mondelez products in New York. (Am. Comp. ¶¶ 115, 117, 138). Mondelez's conduct that is the basis of Kennedy and Derchin's claims—the sale of products with deceptive or misleading labelling to them—occurred in New York and brings Mondelez within the scope of New York's long arm statute (which is undisputed).[12] *See, e.g.*, *Nat'l Hockey League v. Hockey Cup LLC*, No. 18-CV-6597, 2019 WL 130576, at *6 (S.D.N.Y. Jan. 8, 2019) ("This Court has personal jurisdiction over Dewey under Section 302 (a)(1) and this jurisdiction comports with due process. Dewey and his companies have transacted business in New York [and] . . . the business transactions conducted by Dewey in New

_____

[12] New York's long-arm statute provides in relevant part that "a court may exercise personal jurisdiction over any non-domiciliary" for "*a cause of action arising from* any of the acts enumerated":

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state . . . ; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state . . . if he
>
> > (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
> >
> > (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

N.Y. C.P.L.R. § 302(a) (emphasis added).

York are sales of the allegedly infringing products that form the basis for the NHL's claims in this suit.").

The exercise of jurisdiction over Mondelez for their claims would also be consistent with due process. *Johnson v. UBS AG*, 791 F. App'x 240, 242 (2d Cir. 2019) ("To establish specific jurisdiction, a 'defendant's suit-related conduct must create a substantial connection with the forum State.'" (quoting *Walden*, 571 U.S. at 284), *cert. denied*, No. 19-989, 2020 WL 1325874 (U.S. Mar. 23, 2020); *see, e.g.*, *Alcon Labs., Inc. v. Allied Vision Grp., Inc.*, No. 18-CV-2486, 2018 WL 10550777, at *9–11 (E.D.N.Y. Dec. 22, 2018) ("Defendants have purposefully availed themselves of the New York forum by shipping products to New York, advertising and selling products through an interactive website accessible from New York, and circulating advertisements in New York periodicals published by New York-based publishers. Thus, . . . [t]he Court's exercise of jurisdiction over Defendants under these circumstances is reasonable and comports with due process." (citations omitted)).

On the other hand, Plaintiffs Barletta, Nyanjom, Stephens, Boecker, Sousa, Bierly, D'Argenio, Williams, Hunt, Moskowitz, Altes, Parks, Wiley, Fuda, and Jacobs, as purchasers of products in states outside of New York, cannot maintain claims in this Court against Mondelez.[13]  These Plaintiffs are non-New York residents, and even if their claims fell within the New York long arm statute, the lack of a substantial

---

[13] Kennedy and Derchin's claims do not establish personal jurisdiction over Mondelez for the claims asserted by the other Plaintiffs.  "For specific jurisdiction, a defendant's general connections with the forum are not enough," and neither is a defendant's relationship with a third party.  *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1781–82 (2017).  "The mere fact that *other* plaintiffs were" involved in similar conduct in the forum state "and allegedly sustained the same injuries as did the nonresidents . . . does not allow the [court] to assert specific jurisdiction over the nonresidents' claims."  *Id.* at 1781.

connection between the sale of offending products to them and New York means that exercising jurisdiction over Mondelez, a non-resident, would be inconsistent with due process. *See, e.g.*, *Chufen Chen v. Dunkin' Brands, Inc.*, No. 17-CV-3808, 2018 WL 9346682, at *5–6 (E.D.N.Y. Sept. 17, 2018) ("[E]ach named plaintiff in a purported class action must show that in-state contacts specific to their claim give rise to specific jurisdiction over an out-of-state defendant. . . . [T]he named non-resident Plaintiffs have failed to show even one purposeful and relevant activity or occurrence that took place in New York. The Court thus finds that it lacks personal jurisdiction over Defendant with respect to the named non-resident Plaintiffs' claims." (footnote, quotations, citations, and brackets omitted)), *aff'd*, 954 F.3d 492 (2d Cir. 2020).[14]

Thus, the Court recommends that the claims of Plaintiffs Barletta, Nyanjom, Stephens, Boecker, Sousa, Bierly, D'Argenio, Williams, Hunt, Moskowitz, Altes, Parks, Wiley, Fuda, and Jacobs be dismissed for lack of personal jurisdiction.

## III.    Legal Standard for Motion to Dismiss under Rule 12(b)(6)

"The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of Plaintiff['s] claims for relief." *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 155 (E.D.N.Y. 2018) (citing *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)). For a 12(b)(6) motion, the Court must "construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Palin v. N.Y. Times Co.*, 940 F.3d 804,

---

[14] It is premature to decide whether this Court has jurisdiction over Mondelez with respect to the claims of  unnamed class members. "[S]ince unnamed plaintiffs are merely *potential* class members who may never actually be joined to this action, it would be premature for a court to decide whether there is specific jurisdiction over the defendant(s) with respect to their claims." *Simon v. Ultimate Fitness Grp., LLC*, No. 19-CV-890, 2019 WL 4382204, at *4 (S.D.N.Y. Aug. 19, 2019).

809 (2d Cir. 2019) (quotations and alteration omitted); *Amadei*, 348 F. Supp. 3d at 155 ("[W]hen reviewing a complaint on a motion to dismiss for failure to state a claim, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences in favor of Plaintiffs.").

Once the facts are construed in the light most favorable to Plaintiffs, to avoid dismissal, there must be sufficient facts that allege a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (quotations omitted)). "[A] district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference. Of course, it may also consider matters of which judicial notice may be taken under Fed. R. Evid. 201." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A complaint must contain more than "naked assertion[s] devoid of further factual enhancement." *Id.* (quotations omitted). In other words, a plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; Fed. R. Civ. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citation omitted). The determination whether a plaintiff has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S.

at 679; *see also Escamilla v. Young Shing Trading* Co., No. 17-CV-652, 2018 WL 1521858, at *2 (E.D.N.Y. Jan. 8, 2018), *report and recommendation adopted*, 2018 WL 1033249 (Feb. 23, 2018).

IV.    Plaintiffs Fail to State an Unfair Trade Practices or False Advertising Claim

      The claims based on the New York unfair trade practices law, New York General Business Law sections 349 and 350, fail as a matter of law because no representation identified would deceive a reasonable consumer.  But first, assuming personal jurisdiction did exist, the Court must analyze whether any Plaintiff alleges a sufficient nexus to New York to proceed with such a claim.

    A.    Nexus to New York

      Sections 349 and 350 require a territorial nexus with New York to state a claim. *See Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 123 (2d Cir. 2013).  "[T]he transaction in which the consumer is deceived must occur in New York."  *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 (2002); *see also id*. at 324 n.1 ("The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349.").

      Two lines of decisions have developed regarding the territorial nexus requirement.  *Cruz*, 720 F.3d at 123.  The first line of decisions holds "that 'to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York,'" and "focus[es] on where the deception of the plaintiff occurs," requiring, "for example, that a plaintiff actually view a deceptive statement while in New York."  *Id*. (quoting *Goshen*, 98 N.Y.2d at 325).  The second line requires that "the transaction in which the consumer is deceived . . . occur in New York" and "focus[es] on where the

underlying deceptive 'transaction' takes place, regardless of the plaintiff's location or where the plaintiff is deceived." *Id.* (quoting *Goshen*, 98 N.Y.2d at 324).

Under either inquiry, Kennedy and Derchin meet the elements and all other Plaintiffs do not. Kennedy and Derchin allegedly purchased Mondelez products in New York, where they reside, and thus they, by inference, saw the labeling—and were deceived—in New York; furthermore, because they made the purchase in New York, the underlying transaction took place there. (Am. Compl. ¶¶ 115, 138). But all of the other Plaintiffs allege they purchased Mondelez products, and thus were deceived by them, in states other than New York (California, Connecticut, Florida, Idaho, Illinois, Kansas, Massachusetts, New Mexico, North Carolina, Ohio, Virginia, and Washington). (*See id.* ¶¶ 114 ("[P]laintiffs may have purchased the products or services in states other than where they currently reside[.]"), 116–34 (alleging Parks, who resides in Virginia, is the only Plaintiff to have purchased products outside her state of residence, in North Carolina), 138 ("Plaintiffs purchased one or more of the Products . . . within their states and/or other states as described.")). The Amended Complaint otherwise contains no basis to infer that any deception or transaction for these other Plaintiffs occurred in New

York.[15]  Thus, these Plaintiffs fail to state a claim, and the Court recommends any

Section 349 and 350 claims be dismissed on this alternative basis.  *See, e.g.*, *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 403 (S.D.N.Y. 2010) ("Plaintiffs here made and paid for their hotel reservations on the Internet from their respective home states.  The alleged deceptive practice . . . occurred at the time the hotel reservations were made on the websites . . . .  Consequently, any deception occurred when the reservations were made and all of the Plaintiffs, except for Lamattina, made their hotel reservations outside of New York.  Lamattina is therefore the only named plaintiff who can assert a

---

[15] Some courts have described the territorial nexus requirement as a standing issue.  *See, e.g.*, *Cruz*, 720 F.3d at 122–23 ("The District Court held that Cruz lacked statutory standing to bring these claims because he failed to plead that the deceptive practices or relevant trading occurred in New York. . . . Although it is a somewhat close call, our reading of *Goshen* and the cases construing it leads us to conclude that a deceptive transaction in New York falls within the territorial reach of section 349 and suffices to give an out-of-state victim who engaged in the transaction statutory standing to sue under section 349.").  After the Supreme Court's *Lexmark* decision, any "zone of interest" or statutory standing requirement is a question of "whether a plaintiff has a right to sue under a particular substantive law, and is not of jurisdictional import."  *Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 128 (2d Cir. 2020).  Thus, the question is "whether [the] legislatively conferred cause of action encompasses a particular plaintiff's claim."  *Disability Rights N.Y*, 2019 WL 2497907, at *10 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014)); *see also Bank of Am. Corp. v. City of Miami*, 137 S.Ct. 1296, 1302 (2017).  "[I]f a . . . statute permits a plaintiff to bring a claim, a court may not conclude that the plaintiff is outside of the 'zone of interests' that the law protects and thereby preclude the lawsuit."  *Disability Rights,* 2019 WL 2497907, at * 10 (citing *Lexmark*, 572 U.S. at 128) ("[W]e ask whether [plaintiff] has a cause of action under the statute[.]").  "[P]rudential limitations cannot limit the class of plaintiffs . . . authorized to bring suit."  *Jawk Enters., LLC v. Greenlight Energy, Inc.*, No. 19-CV-4212, 2019 WL 5881752, at *1 (E.D.N.Y. Nov. 5, 2019) (citing *Lexmark*, 572 U.S. at 126 ("Just as a court cannot apply its independent policy judgment to recognize a cause of action that Congress has denied, it cannot limit a cause of action . . . merely because 'prudence' dictates.")).

valid claim under GBL § 349.").  The Court will proceed to analyze only Kennedy and Derchin's claims.

      B.  <u>No Representation is Materially Misleading</u>

"New York's General Business Law prohibits the use of deceptive acts or practices and false advertising in the conduct of any business, trade or commerce." *Axon*, -- F. App'x --, 2020 WL 2787627, at *2 (quotations and brackets omitted) (citing N.Y. Gen. Bus. Law §§ 349 and 350).  Specifically, Section 349 of the General Business Law prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state," N.Y. Gen. Bus. Law § 349, and Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state," *id.* § 350.  Both provisions are analyzed under the same framework: "To survive a motion to dismiss, plaintiffs must plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled by the relevant statements." *Axon*, -- F. App'x --, 2020 WL 2787627, at *2 (citing *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018)) (quotations omitted).  "Furthermore, where the allegations of a complaint are materially inconsistent with the evidence a plaintiff relies on to make those allegations, [a court] may easily conclude that plaintiffs' claims lack the facial plausibility necessary to survive a motion to dismiss." *Id.* (citing *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013))

(quotations and brackets omitted); *see also Koch v. Acker, Merrall & Condit Co.*, 18

N.Y.3d 940, 941 (2012).[16]

"It is well settled that a court may determine as a matter of law that an allegedly

deceptive advertisement [or label] would not have misled a reasonable consumer."

*Fink*, 714 F.3d at 741.  The standard is an objective one: "Plaintiffs must plausibly allege

that a significant portion of the general consuming public or of targeted consumers,

acting reasonably in the circumstances, could be misled."  *Jessani*, 744 F. App'x at 19

(quotations omitted).

      1.  <u>"Grahams" and "Graham Crackers" and "Whole Grains"</u>

Plaintiffs allege that labelling Mondelez's Nabisco and Honey Maid products as

"grahams" or "graham crackers" is materially misleading because the terms imply the

products contain more graham or whole wheat flour than white flour or are made

entirely without white flour.  (Am. Compl. ¶¶ 24–33, 87–89, 94–96).  They also allege

that the products purport to contain more whole grains than white flour because of the

darker hues of graham crackers, (*id.* ¶¶ 79–84), and that the statement "made with 8g of

whole grain per 31g serving" fails to disclose that the predominance of white flour and

the lack of nutrients, (*id.* ¶¶ 85–86).  These claims fail as a matter of law.

---

[16] Had the Court not found that Plaintiffs abandoned their California claims, the Court would have recommended that such claims be dismissed for the same reasons as the New York claims because the deception element under New York law is the same in California.  *See Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) ("To state a claim for false advertising or deceptive business practices under New York or California law, a plaintiff must plausibly allege that the deceptive conduct was 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" (quoting *Fink*, 714 F.3d at 741)) (citing Cal. Bus. & Prof. Code §§ 17200, 17500).

The word "graham" when included in the term "grahams" or the phrase "graham crackers" does not connote graham flour. A reasonable consumer hearing the term "graham," even without the word "cracker," thinks first and foremost of a slightly sweet, darker-colored, rectangular, and perforated cracker. It is a type of cracker that is used in desserts like s'mores. The Court also does not believe a reasonable consumer would associate "graham" as meaning "graham flour," and as a result assume that graham flour is either the predominant ingredient in the product or that graham flour predominates over other types of flour. *Cf. Hemy v. Perdue Farms, Inc.*, No. 11-CV-888, 2011 WL 6002463, at *15 (D.N.J. Nov. 30, 2011) ("[T]he meaning Plaintiffs would have the Court attach to 'raised' is not the commonly understood definition of that term. In such circumstances, the plaintiff must incorporate allegations explaining the basis for a reasonable consumer having a different interpretation—merely the Plaintiffs' *ipse dixit* does not suffice."); *Punian v. Gillette Co.*, No. 14-CV-5028, 2016 WL 1029607, at *6–7 (N.D. Cal. Mar. 15, 2016) (finding batteries' "guarantee" was not deceptive under California law because a "reasonable consumer would understand the Duralock guarantee as a promise to repair, replace, or refund a battery that is in storage and fails within ten years of purchase—not as a promise that Duralock Batteries have no potential to leak," an interpretation comporting with dictionary definition of guarantee). Indeed, if reasonable consumers associated grahams with graham flour, Plaintiffs would not have needed to repeatedly refer to "graham flour"—as opposed to "graham"—in their

complaint.  (*See* Am. Compl. ¶¶ 24, 25, 27, 29, 31, 32, 38, 40, 41, 54, 80, 82, 91, 95–97).[17]

A tried and true example illustrates the point.  The Court of Appeals for the Sixth Circuit long ago recognized that the moniker "Coca Cola" is not deceptive (in the trademark context) in its use of two words of ingredients that are in the product, but not the predominant ingredients.  In *Nashville Syrup Co. v. Coca Cola Co.*, the court considered "[t]he argument . . . that the use of the name, 'Coca Cola,' implies to the public that the syrup is composed mainly or in essential part of the coca leaves and the cola nut; and that this is not true."  215 F. 527, 531 (6th Cir. 1914).  "The fact is that one of the elements in the composition of the syrup is itself a compound made from coca leaves and cola nuts.  This element becomes a flavor for the complete syrup, and is said to impart to it aroma and taste characteristic of both.  This flavoring element is not in large quantity (less than [two percent]), but it is impossible to say that it does not have appreciable effect upon the compound.  The question then is whether the use of the words is a representation to the public that the syrup contains any more of coca or of cola than it really does contain."  *Id.*  Looking to the origins of the term, the court

---

[17] The lack of association between graham and graham flour is also evident in Plaintiffs' proposed "Alternate Names" for the Mondelez products contained in their table:

| Alternate Name | Product Claim |
|---|---|
| "Crackers Made with Graham Flour" | "Crackers Made with Graham Flour" |
| "Graham-Flavored Cracker" | |
| "Crackers with X% Graham Flour" | |

(Am. Compl. ¶ 31).  The comparison starts with a false premise that Honey Maid and Nabisco products are claiming that they are "Crackers Made with Graham Flour."  In other words, in providing alternatives to the current label of the product as a graham cracker, they resort to the assuming what they seek to prove, that the term "graham" means "graham flour."

"conclude[d] that the name Coca Cola as applied to plaintiff's product, while undoubtedly suggestive, is not so substantially and really deceptive as to invalidate the registered mark." *Id.* at 533.

Plaintiffs' arguments, attempting to establish an association between graham crackers and graham flour, are without merit. Plaintiffs point to dictionary definitions to demonstrate what a reasonable consumer believes when he or she reads "graham cracker": "a slightly sweet cracker made of whole wheat flour," Merriam-Webster's definition; or "a semisweet cracker, usually rectangular in shape, made chiefly of whole-wheat flour," a definition used by an online dictionary (Am. Compl. ¶ 26 (citing *Graham Cracker*, Dictionary.com, https://www.dictionary.com/browse/graham-cracker (last visited July 8, 2020)). If the Merriam-Webster definition establishes the meaning of the term "graham cracker," then Mondelez's products are not misleading or deceptive, because they indisputably contain graham flour. If Plaintiffs' argument is something more—that "graham cracker" suggests a cracker with predominantly graham flour—these authorities undercut such an association. That is, one definition (Merriam-Webster) defines the cracker without any indication of the quantum of graham flour, whereas the other (Dictionary.com) suggests the product is "chiefly" of graham flour. Such a variation between ostensibly reasonable definitions suggests that Mondelez's use is necessarily not misleading or deceptive.

Plaintiffs also allege that Mondelez products are sold in the same places as other graham crackers that are predominantly graham flour, and that Mondelez's sister company sells Honey Maid and Nabisco products in an "institutional" channel with more graham flour. (Am. Compl. ¶¶ 38–54). But that a similar product contains more or less of an ingredient misses the point—it does not establish deception. For

Mondelez's labels to be deceptive, a reasonable consumer must expect Nabisco and

Honey Maid graham crackers to contain more graham flour than non-graham flour, and

for the reasons stated, use of the word "graham" before "cracker" does not lead a

reasonable consumer to that inference.[18]

This result would be different if the products were labelled as "Crackers Made

with Graham Flour." In *Mantikas v. Kellogg Co.*, the Court of Appeals vacated a

judgment entered by the District Court after granting a motion to dismiss Section 349

and 350 claims. 910 F.3d 633, 634 (2d Cir. 2018). The plaintiffs alleged that Kellogg

Company's labelling of its Cheez-It crackers as "whole grain" and "made with whole

grain" caused reasonable consumers to believe the grain in the product was

predominantly whole grain when it was, in fact, primarily an enriched white flour-based

product. *Id.* The District Court dismissed the complaint reasoning that in the context of

the entire Cheez-Its packaging, including other statements indicating the precise

amount of whole grains per serving, a reasonable consumer would not be misled. *Id.* at

635–36.

The Court of Appeals reversed. It concluded that the terms "whole grain" and

"made with whole grain" were misleading, despite the additional information about the

precise amounts, "because they falsely imply that the grain content is entirely or at least

predominantly whole grain, whereas in fact, the grain component consisting of enriched

---

[18] The parties' tussle about as "cookies" is unhelpful. (*See e.g.*, Def.'s Mot. at 8–9; Pls.' Resp. at 11–12). The "suggest[ion] that reasonable consumers could not be misled by these representations [about graham crackers] because the products are sold in the cookie aisle of the supermarket . . . takes us fairly far afield of facts that would be appropriately considered on a motion to dismiss." *Red v. Kraft Foods, Inc.*, No. 10-CV-1028, 2011 WL 938297, at *4 (C.D. Cal. Jan. 13, 2011).

white flour substantially exceeds the whole grain portion." *Id*. at 637. The side panel that disclosed further ingredient details did not make the statements less misleading—"a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box." *Id*. In so doing, the Court rejected Kellogg's theory that products could be labeled with a specified ingredient if it was merely present such that "crackers contain[ing] an iota of whole grain, along with 99.999% white flour," could be labelled "whole grain." *Id*.

Plaintiffs' "whole grain" allegations in this case are distinguishable from the products in *Mantikas*. The products here are not labelled or represented as "crackers made with graham flour" or "crackers made with graham"—they are instead referred to as "grahams" or "graham crackers." And as noted above, saying "graham" or "graham cracker" does not necessarily constitute a representation about the quantum of graham flour in the product. Use of the label "graham" does not implicate the same concern about a particular ingredient being highlighted and presented to consumers to deceive them into thinking such an ingredient is the primary or predominant ingredient. The representations here fall a step short of those at issue in *Mantikas*.[19]

---

[19] One court has considered this particular of issue on a motion to dismiss of whether the term "graham cracker" is deceptive in its implication of the use of whole wheat flour in "Honey Made Grahams" and "Teddy Grahams," when they are actually made with more white flour. In *Red*, 2011 WL 938297, at *4, the court denied a motion to dismiss. In considering the defendant's "primary argument for dismissal . . . that the actual ingredients are disclosed in the ingredients list," the Court stated, "*Williams* [*v. Gerber Prods. Co*., 552 F.3d 934 (9th Cir. 2008)] suggests that this would not be an appropriate basis for dismiss[al.]" 2011 WL 938297, at *4. The court did not explain further.

Moreover, Mondelez's products state that there are "8g of whole grain per 31g serving." This disclosure remedies any ambiguity about how much whole grain is in the product per serving. And Plaintiffs' contention that the "8g of whole grain" statement is itself deceptive is without merit. Using a specific measure for the serving size, 31 grams, makes clear that 23 other grams are something else and leaves no room for the consumer to think there is any more whole grain content than the eight grams listed. *See, e.g.*, *Ibarrola v. Kind, LLC*, No. 13-CV-50377, 2014 WL 3509790, at *3 & *5 (N.D. Ill. July 14, 2014) ("[T]he sugar content of Vanilla Blueberry Clusters—5 grams per 29 gram serving—is indicated on the packaging. . . . The Court finds that the Complaint fails to plausibly and adequately allege that Ibarrola was deceived by Kind's representations.").

In conclusion, the Court recommends the claim based on the terms "grahams," "graham crackers," and "8g of whole grain per 31g serving," be dismissed as not misleading or deceptive.

2. Honey Representations and No High Fructose Corn Syrup

Plaintiffs separately allege that Mondelez misleads consumers about the honey content in its graham cracker products. They contend that consumers are led to believe the honey is the only sweetener used, that only pure honey (not a honey-blend) is used, the honey content is greater than the white sugar content, and that honey is the exclusive or predominant sweetener. In fact, according to Plaintiffs, the grahams contain less honey than sugar and use a honey-invert sugar blend and artificial honey flavoring. (Am. Compl. ¶¶ 27, 55, 60, 62).

The packaging contains the following statements: "made with real honey," "*Honey* Maid," and "no high fructose corn syrup"; they also contain the images of a bee

and honey dipper on the packaging. (*Id.* ¶ 59 (emphasis added); *see supra* p. 6).

Mondelez also lists honey as its own ingredient but fails to mention the impact of the

artificial sweetener. (Am. Compl. ¶¶ 71–75; *see supra* p. 6).[20] These representations are

not misleading or deceptive.

Stating the grahams are "made with real honey" is a factually true statement

about the product. Plaintiffs define "honey" as a "thick, sweet, syrupy substance that

bees make as food from the nectar of plants or secretions of living parts of plants and

store in honeycombs." (Am. Compl. ¶ 58 (quoting *Webster's New World College*

*Dictionary* (Wiley Publishing, Inc. 2010)). There is no dispute that the grahams are

made with real honey, as defined by Plaintiffs.

And these statements provide no basis for a reasonable consumer to make any of

the inferences that Plaintiffs allege are misleading. Mondelez's products do not state

anywhere that honey is the only ingredient; only pure honey, unmixed with any other

sweetener, is in the product; or that no honey-flavoring or artificial honey additive is in

the product. The product uses real honey, and additional sweeteners and additives,

some of which are honey-based.[21] Sweetening grahams with honey does not foreclose

---

[20] The Amended Complaint also alleges that consumers expect molasses to be a
predominant sweetener because Mondelez represents that its graham crackers do not
contain high fructose corn syrup, which is associated with sugar. (Am. Compl. ¶ 57–58).
Yet, Plaintiffs do not identify any representation from Mondelez that would lead a
reasonable consumer to draw an inference about the molasses content, and the Court
concludes that this allegation cannot be the basis of a viable deception claim.

[21] Likewise, the phrase "contains no high fructose corn syrup" is a factually
correct statement that fails to convey the inferences Plaintiffs allege. *See, e.g.*, *Hadley v.*
*Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1081 (N.D. Cal. 2017) ("Plaintiff is essentially
alleging that Defendant's 'No High Fructose Corn Syrup' statements distract consumers
from the fact that added sugar with a similar chemical composition is in the product.
However, . . . Defendant's statement that the product lacks high fructose corn syrup is
not false and does not misrepresent the contents of the product.").

the use of other sweeteners or make the representation deceptive. *See, e.g.*, *Lima v. Post Consumer Brands, LLC*, No. 18-CV-12100, 2019 WL 3802885, at *7 (D. Mass. Aug. 13, 2019) (holding the labelling of "*Honey* Bunches of Oats" with honey dipper was not deceptive because the "packaging . . . ma[d]e[] no objective representation about the amount of honey, leaving the cereal's accurate list of ingredients as the only unambiguous representation of the amount of honey relative to other sweeteners" and a reasonable consumer "would have recognized that the cereal might be sweetened with some honey, but also with other sweeteners"), *reconsideration denied*, 2019 WL 4889599 (Oct. 2, 2019); *Sarr v. BEF Foods, Inc.*, No. 18-CV-6409, 2020 WL 729883, at *4, *5 (E.D.N.Y. Feb. 13, 2020) ("BEF's emphasis of the Mashed Potatoes' 'Real . . . Butter' content is not likely to mislead a reasonable consumer. First, the Mashed Potatoes do, in fact, contain real butter. Second, it is not plausible that a reasonable consumer would likely interpret the 'real butter' representation to imply that the Mashed Potatoes did not also contain additional fats. Certainly, a significant portion of the general consuming public . . . acting reasonably would not arrive at such an interpretation[.]" (citations and quotations omitted)).

Nor is there any basis to conclude that the statement "made with real honey" is misleading because the honey comes in the form of a honey-sugar blend. Reasonable consumers would not expect, upon learning that the grahams contain honey, that the honey is present in a particular form or not mixed with other ingredients. *See Manchouck v. Mondelez Int'l Inc.*, No. 13-CV-2148, 2013 WL 5400285, at *3 (N.D. Cal. Sept. 26, 2013) ("It is ridiculous to say that consumers would expect snack food 'made with real fruit' to contain only 'actual strawberries or raspberries,' rather than these

fruits in a form amenable to being squeezed inside a Newton [cookie].”), *aff'd*, 603 F. App'x 632 (9th Cir. 2015).

As for the inference about predominance—that honey predominates over other sweeteners—again *Mantikas* does not assist these Plaintiffs. In holding that the representations about the amount of whole grains in the products were misleading, the Court of Appeals distinguished cases cited by the defendant that “alleged they were misled about the quantity of an ingredient *that obviously was not the products' primary ingredient*.” 910 F.3d at 638 (emphasis added). So while “reasonable consumers are likely to understand that crackers are typically made predominantly of grain, . . . [t]hat same consumer, confronted with the claim that a cracker is ‘made with real vegetables,’” for example, “likely would not likely conclude that the cracker was made predominantly of vegetables.” *Id.*

Likewise, a reasonable consumer could not be misled into thinking that “made with honey” means the grahams contain more honey than sugar, because honey is not the primary ingredient in grahams. The representations related to honey fall well within the consistent line of cases that hold similar representations about non-dominant ingredients are non-deceiving, including those cited by *Mantikas*. *See Mantikas*, 910 F.3d at 638 (collecting cases); *e.g.*, *Red v. Kraft Foods, Inc.*, No. 10-CV-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) (“Plaintiffs' theory of the case is that the packaging suggests the product is *healthy* and contains a *significant amount* of vegetables, because the packaging boasts that the crackers are made with real vegetables and depicts vegetables. The fact remains that the product is a box of crackers, and a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables.” (quotations and citation omitted)).

And at the end of the day, Plaintiffs do not dispute that real honey is actually added or that any of the honey representations are false, and the Court cannot conclude that reasonable consumers would be misled into drawing the inferences Plaintiffs wish to draw from the statement "made with real honey."[22]

In conclusion, the Court recommends the Section 349 and 350 consumer protection claims be dismissed.

V.    Plaintiffs Fail to State Any Other Claim

Plaintiffs allege negligent misrepresentation, (Am. Compl. ¶¶ 159–65), fraud, (*id.* ¶¶ 176-84), breach of express warranty and implied warranty of merchantability and violation of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, (*id.* ¶¶ 166–75), and unjust enrichment, (*id.* ¶¶ 185–86). Each of these claims should be dismissed as a matter of law.[23]

---

[22] This case is unlike *Red v. Kraft Foods, Inc.* because there the grahams were alleged to be "sweetened with white sugar and high-fructose corn syrup and *not honey*, which is 'absent except in a trace amount.'" 2011 WL 938297, at *3 (emphasis added). Similarly, the court in *Tucker v. Post Consumer Brands, LLC* denied a motion to dismiss a case about representations on a Honey Bunches of Oats label because it could not conclude, "based on plaintiff's allegations alone, that honey is a sweetener in the cereals." No. 19-CV-3993, 2020 WL 1929368, at *3 (N.D. Cal. Apr. 21, 2020). That is not the case here where Plaintiffs do not dispute honey is in Mondelez's products.

[23] Mondelez moved to dismiss the negligent misrepresentation, breach of implied warranty of merchantability, and violation of the Magnuson Moss Warranty Act claims, but Plaintiffs failed to respond to any of its arguments. Therefore, the Court concludes that these claims were abandoned and recommends they be dismissed. *See McLeod*, 995 F. Supp. 2d at 143; *e.g.*, *Wexler v. Dorsey & Whitney, LLP*, No. 18-CV-3066, 2019 WL 5485265, at *5 (E.D.N.Y. Oct. 25, 2019) (finding claim abandoned where plaintiff failed to respond to motion to dismiss arguments about allegations supporting the claim), *aff'd*, -- F. App'x --, No. 19-CV-3632, 2020 WL 3864950 (2d Cir. July 9, 2020).

A. <u>Fraud</u>

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015).

As discussed, no misrepresentation has been identified. Where a consumer protection claim fails on this ground, so must a fraud claim. *Brumfield v. Trader Joe's Co.*, No. 17-CV-3239, 2018 WL 4168956, at *5 (S.D.N.Y. Aug. 30, 2018) ("[T]he Complaint does not plead a false representation. The Product's label truthfully states that the product is 'black truffle flavored,' because its synthetic ingredients taste like black truffle. The claims for fraud and negligent misrepresentation are dismissed under both New York and California law."); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017) (dismissing fraud claim based on failure to allege a misrepresentation on same theory as Section 349 and 350 claims).

B. <u>Breach of Express Warranty</u>

Plaintiffs allege a cause of action for breaches of an express warranty. The Court recommends it be dismissed.

"A claim for breach of express warranty requires breach of a promise concerning the goods that was part of the basis of the bargain." *Boshnack v. Widow Jane Distilleries LLC*, No. 19-CV-8812, 2020 WL 3000358, at *4 (S.D.N.Y. June 4, 2020) (quotations omitted) (citing N.Y. U.C.C. Law § 2-313 and *Rogath v. Siebenmann*, 129 F.3d 261, 264 (2d Cir. 1997)). Thus, to "state a claim for breach of express warranty under New York law, a plaintiff must allege (1) the existence of a material statement

amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014). New York law also establishes that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty." N.Y. U.C.C. § 2-313(1)(a). "Whether Plaintiff's interpretation of [a] label was erroneous or reflected a promise made by Defendant necessarily depends on what a reasonable consumer would believe." *Singleton v. Fifth Generation, Inc.*, No. 15-CV-474, 2016 WL 406295, at *11 (N.D.N.Y. Jan. 12, 2016). This "reasonable consumer" standard is the same as that analyzed under New York's consumer protection law. *See Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 185 (E.D.N.Y. 2018).

The representations Plaintiffs identified do not amount to warranties. As discussed above, the graham and whole grain statements do not warrant that more whole grains than white flour are in the crackers. And the honey statements do not warrant that more honey than sugar is used or that honey is the predominant sweetener. Thus, there is no basis to claim a breach of any express warranty, and the Court recommends this claim be dismissed. *E.g.*, *id.* ("Because the court has concluded that a reasonable consumer would not interpret the 'Florida's Natural' brand name as warranting that the products are free from trace amounts of glyphosate, plaintiff's breach of warranty claim is dismissed."); *Brumfield*, 2018 WL 4168956, at *3 ("The Complaint identifies only one express warranty: Trader Joe's 'expressly warranted that Trader Joe's Truffle Oil was, in fact, flavored by black truffle.' However, that is not what the Product label warrants; it states that the olive oil is 'Black Truffle Flavored.' That is

what Plaintiffs received when they purchased the Product—olive oil that tasted like black truffle. As a result, the fact that the Product did not contain actual black truffle did not constitute a breach of express warranty, and that claim is dismissed.").

### C. Unjust Enrichment

"To sustain a claim of unjust enrichment a plaintiff must show that the defendant has at the plaintiff's expense been enriched and unjustly so." *Olson v. Major League Baseball*, No. 20-CV-632, 2020 WL 1644611, at \*10 (S.D.N.Y. Apr. 3, 2020), *reconsideration denied*, -- F. Supp. 3d --, 2020 WL 3025280 (June 5, 2020). Where a deceptive trade practices claim fails for failure to allege deception, an unjust enrichment claim fails, too. *See Axon*, 2020 WL 2787627, at \*3 (citing *Indyk v. Habib Bank Ltd.*, 694 F.2d 54, 57 (2d Cir. 1982))("[T]he unjust enrichment claim here fails for the same reasons that Axon's other claims do—namely, that she has not alleged a fraud that would render Florida's Natural's enrichment 'unjust.'"). Thus, because Plaintiffs fail to allege any theory on which to recover, the Court recommends this claim be dismissed as well.

### VI. Leave to Amend

Plaintiffs request leave to amend in the alternative to denial of the motion to dismiss. (Pls.' Resp. at 29). While leave should be freely given when justice so requires after the deadline to amend has passed, Fed. R. Civ. P. 15(a)(2), as it has here, (Order dated July 26, 2019), "leave may be denied where amendment would be futile," *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).

Having failed to identify any misleading or deceptive statements, any amendment to Plaintiffs' consumer protection claims would be futile. *See, e.g.*, *Melendez v. ONE Brands, LLC*, No. 18-CV-6650, 2020 WL 1283793, at \*9 (E.D.N.Y. Mar. 16, 2020) ("Melendez's failure to plead materially misleading conduct . . . also could not be cured

by granting him leave to amend."); *Axon*, 2019 WL 8223527, at *2 ("[P]laintiff's claims regarding the misleading nature of defendant's products should be dismissed for failure to state a claim. Plaintiff's motion to amend is therefore denied, and the complaint is dismissed with prejudice."). And Plaintiffs, having premised their other claims on the same bases, abandoned most of those claims and fatally failed to sufficiently plead their elements, the Court recommends all other claims be dismissed with prejudice as well.[24]

CONCLUSION

For the reasons stated above, it is respectfully recommended that Mondelez's motion to dismiss be granted in its entirety.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within fourteen days of receipt of this Report. Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[ ] [judge's]

---

[24] Moreover, regardless of the merits, for Plaintiffs other than Kennedy and Derchin because, having amended once already and failed to establish personal jurisdiction, any new amendment as to where they purchased Mondelez products would be futile. *See, e.g.*, *Smith v. United States*, 554 F. App'x 30, 32 (2d Cir. 2013) ("[D]ismissal for lack of personal jurisdiction was appropriate. Because these flaws in Smith's complaint, even liberally read, are fatal substantive defects that could not be cured by further pleading, the district court did not abuse its discretion in denying leave to amend. . . . A futile request to replead should be denied." (citations, quotations, and brackets omitted)).

report operates as a waiver of any further judicial review of the magistrate[ ] [judge's]

decision." (quotations omitted)).

SO ORDERED.

*/s/ Sanket J. Bulsara* July 10, 2020
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York